**(132 So. 653)**

**PRICE et al. v. TOWN OF RUSTON et al.**
No. 30705.

Feb. 2, 1931.

Barksdale, Warren, & McBride, of Ruston, for appellants.

J. W. Elder, of Ruston, for appellees.

O'NIELL, C. J.

On the 4th day of April, 1910, Mrs. Arilla A. Price, being the owner of a lot of ground in the town of Ruston, and being about to construct a two-story brick building on the land, entered into an agreement with the Ruston Lodge, No. 1134, of the Benevolent and Protective Order of Elks, by which the lodge was permitted to construct, for its lodge room and meeting place, a third story on the building. It was stipulated that the third story should conform with the two other stories in construction and appearance, according to plans and specifications which had been prepared by the architect. The only consideration stipulated or paid by the lodge for the privilege of so constructing and maintaining its lodge rooms on the property of Mrs. Price was the sum of $573.64, which was

the estimated cost to her of constructing additional walls and floor joists and strengthening her two stories so as to support the additional story. There are two paragraphs in the contract which call for interpretation in this suit, viz.:

"In the event the party of the second part [meaning the Elks' Lodge] shall desire to sell the third story, the party of the first part [meaning Mrs. Price] shall be given the option and preference of purchasing the same at the price at which it shall be offered."

"The covenants and stipulations herein contained shall run with the ownership of the property and shall be binding upon and inure to the benefit of the respective parties thereto, their heirs, successors, assigns or legal representatives."

The contract was promptly recorded in the conveyance records of the parish in which the property is situated; and the building, now called the Price building, was constructed according to the agreement. The first story was used for commercial purposes, the second story for offices, and the third story for the sessions of the Elks' Lodge.

On the 25th of August, 1910, the Elks' Lodge borrowed $3,500 from the Ruston Building & Loan Association, and secured the payment of the loan by selling the third story of the Price building to the association for $3,500 cash, and immediately buying it from the association for $3,500, represented by a promissory note secured by the vendor's lien and mortgage on the property.

On the 23d of November, 1927, the Elks' Lodge borrowed $1,500 from the building and loan association, and secured the payment of the loan by selling the third story of the Price building to the association for $1,500 cash, and immediately buying it from the association for $1,500, represented by a promissory

note secured by the vendor's lien and mortgage on the property.

Mrs. Arilla A. Price died on the 12th of July, 1910, leaving a will in which she bequeathed her property to her husband, Fred W. Price. He died intestate on the 26th of February, 1921. The plaintiffs in this suit are the heirs of Fred W. Price.

The Elks' Lodge defaulted on its obligation to the building and loan association, and, in December, 1929, the association foreclosed its mortgage by executory proceedings. The mortgaged property, being the third story of the Price building, was advertised to be sold by the sheriff on the 25th of January, 1930, and was in fact sold on that day, for $3,100, to the town of Ruston, the last and highest bidder. The attorney for the plaintiffs attended the sale; and immediately before the sale he announced to the bystanders that the Price heirs, whom he represented, would avail themselves of the option in the recorded contract between the deceased, Mrs. Price, and the Elks' Lodge, either to take or not to take the property at the highest price which any one would bid for it. The attorney then had the sheriff read that part of the contract between Mrs. Price and the Elks' Lodge; and, when the sheriff called for bids, the attorney for the Price heirs bid an amount sufficient to satisfy the writ, nearly $2,100. The last and highest bid was that of the mayor of Ruston, for the town of Ruston, $3,100. The moment the property was adjudicated to the town of Ruston, the attorney for the Price heirs tendered $3,100 to the mayor, who refused to accept it; and then the attorney for the Price heirs tendered the amount to the sheriff, and demanded a deed for the property. The sheriff refused to give the Price heirs a deed for the property, and two days later gave the town of Ruston a deed for it. This suit was brought on the next day, to enforce the option reserved by the deceased, Mrs. Price, for herself and her heirs and assigns, in her contract with the Elks' Lodge. The plaintiffs deposited the $3,100 in the registry of the court when they filed their petition.

The district judge decided in favor of the Price heirs. The town of Ruston has appealed from the decision.

The defendant town of Ruston, before answering the suit, pleaded that the plaintiffs' petition did not disclose a cause or right of action, for the following reasons, viz.: First, that it was not alleged that the Elks' Lodge "desired" to sell the property, which, in fact, the sheriff sold; second, that it was not alleged that the plaintiffs could not be compensated in damages for the alleged breach of the contract; third, that two of the plaintiffs were minor children, represented by their tutrix, and claiming a fourth interest in the contract, and that it was not alleged that the tutrix was authorized to invest the funds of the minors in the property; and, fourth, that the option was null for want of a stipulation limiting the time in which it should have been exercised. The district judge disposed of these pleas in his decision of the case on its merits; and we shall dispose of them likewise.

■ We agree with the district judge that it would do violence to the intention of the parties to the contract if the word "desire" should be construed literally, in the clause giving to Mrs. Price and her heirs and assigns the right to buy the third story on her building, at the price at which it might be offered for sale, in the event the Elks' Lodge should desire to sell it. Mrs. Price was willing that this fraternal and benevolent and protective organization, the Elks' Lodge, should own the third story of the Price build-

ing, and occupy her premises free of rent, as long as the lodge should continue to own the third story; but she was not willing to be bound to allow any one else, or any other institution, to own the third story of the Price building and occupy her premises free of rent. The expression "in the event the party of the second part shall desire to sell," meant in the event the Elks' Lodge should be about to sell, whether willingly or because of financial inability to hold the property. The purpose of the clause in the contract was to prevent the Elks' Lodge from being divested of its title without giving Mrs. Price or her heirs or assigns the right to take the title at the price which any other buyer would give for it.

■■ It is argued in appellant's brief that the only way in which the Price heirs could have availed themselves of their so-called option, at the sheriff's sale, was to make a bid higher than that for which the property otherwise would have been sold. That construction of the option would make it worthless in case of a forced sale; because, regardless of the contract, Mrs. Price and her heirs and assigns had the right, in common with every body else, to make the last and highest bid for the property at a forced sale. Our opinion is that one of the main purposes of the option was to save Mrs. Price and her heirs and assigns from the danger, in case of a forced sale, of having to bid an exorbitant price to prevent any one else, other than the Elks' Lodge, from owning the third story of the Price building, and from occupying the space free of rent.

It is suggested that the interpretation which the district judge has given to the clause in question made it utterly useless and unavailing for any one except the Price heirs to bid on the property at the sheriff's offering of it for sale; but that is not quite cor-

rect, because the Price heirs were not bound to take the property at the highest price bid, and would not have taken it if the price had not been satisfactory to them.

■ The appellant's argument that the only remedy of the Price heirs was to sue for damages for breach of the contract is founded upon articles 1926 and 1927 of the Civil Code. Article 1926 gives the obligee the option, in case of a breach of contract, either to sue for damages or to sue for specific performance if the case is one which admits of specific performance. Article 1927 declares that ordinarily a breach of contract entitles the party aggrieved to an action only for damages, but that, where damages would not be adequate compensation, and the party breaching the contract has the power to perform it, he may be constrained to a specific performance. There is nothing in these articles of the Code to deprive the plaintiffs of a right of action for specific performance of the contract in question. An action for damages would not be appropriate, because it would be impossible to calculate the amount of damages that would compensate the plaintiffs for a breach of the contract. But, as a matter of fact, the plaintiffs are not complaining of a breach of the contract. They are merely trying to avail themselves of a right given to them by the contract.

■ The complaint that two of the plaintiffs, having a fourth interest in the contract, are minors, and that their tutrix does not appear to be authorized to invest their funds in the property, is a matter which does not concern the town of Ruston. The tutrix is merely protecting the rights of her wards, and may be putting up the money for them, as far as the record shows. If the children do not ratify what she is doing for them in this suit, but undertake to repudiate it, when

they come to the age of majority, the complaint will be theirs, and no body's else.

 There is no merit in the appellant's argument that the option was null for want of a stipulation limiting the time within which it might be exercised. The stipulation limiting the time was that the option would be available whenever the Elks' Lodge might desire to sell the property, meaning whenever it might become necessary for Mrs. Price or her heirs or assigns to prevent the title to the third story of the Price building from passing to some one else.

It is contended by the appellant that the option which Mrs. Price reserved in her contract with the Elks' Lodge was lost when her husband, who was her legatee, allowed the lodge to sell the property to the building and loan association, and to reacquire it immediately, on the 25th of August, 1910. Although the transaction constituted two sales, and created a vendor's lien, as far as the building and loan association was concerned, the transaction was regarded by the Elks' Lodge and by Price as being merely the negotiation of a loan of $3,500. It cannot be said that Price tacitly consented that the building and loan association should become and remain the owner of the property, because he must have known, from the resolution of the board of trustees of the Elks' Lodge, authorizing a loan of $3,500, that the title would be immediately reinvested in the Elks' Lodge.

The defendant filed a plea of estoppel in this case, founded upon the fact that F. S. Price, one of the plaintiffs, was a member of the board of trustees of the Elks' Lodge, and in that capacity signed the two acts of sale by which, on the 23d of November, 1927, the Elks' Lodge transferred the property to the building and loan association and immediately reacquired it from the association. The record shows that that transaction also was merely the negotiation of a loan, as far as the Elks' Lodge was concerned, notwithstanding it was a sale and resale in so far as it gave the building and loan association the advantage of a vendor's lien.

Our conclusion is that the judgment appealed from is correct.

The judgment is affirmed.