## Richmond

### Theresa Freitas Hill and Jack Marvin Hill v. Gulf Oil Corporation.

December 1, 1958.

Record No. 4853.

Present, All the Justices.

The opinion states the case.

*Herman A. Sacks* (*Sacks & Sacks,* on brief), for the appellants.

*Edward R. Baird* and *Charles E. Ford* (*Baird, Crenshaw & Lanning; Murray, Ford, West & Wilkinson,* on brief), for the appellee.

Eggleston, C. J., delivered the opinion of the court.

Gulf Oil Corporation, hereinafter referred to as Gulf or the plaintiff, filed in the court below its bill against Theresa Freitas Hill and Jack Marvin Hill, hereinafter referred to as the defendants, praying for specific performance of a written contract whereby, it was alleged, the defendants were bound to convey to the plaintiff, Gulf, a lot of land in the city of Norfolk. The bill alleged that on January 9, 1952, the defendants had leased the property to the plaintiff, Gulf, for a term of years; that the lease contained a provision giving the lessee, Gulf, an option to purchase the property for the sum of $17,000, "upon written notice to be mailed to Lessors by Lessee not later than December 14th, 1956," of its intention to do so; that although the lessee, Gulf, gave the defendant lessors the required notice of its intention to exercise the option and purchase the property, the defendants refused to comply with their contract; and that the plaintiff, Gulf, having been always willing and ready to comply with its contract, was entitled to specific performance thereof. The prayer was that the defendants be required to perform specifically the agreement and make and deliver to the plaintiff a good and sufficient general warranty deed conveying the property to it.

The defendants filed an answer admitting the terms of the contract, but denying that Gulf had given to them the required notice of its intention to exercise its option to purchase the property, and

for that reason it was not entitled to the specific performance prayed for.

After an ore tenus hearing the lower court entered a decree requiring the defendants to perform specifically the agreement and convey the property to the plaintiff, Gulf, by a deed with general warranty and the usual covenants of title. From that decree the defendants have appealed.

On appeal the defendants claim that the decree is contrary to the law and the evidence; that the evidence fails to show that the plaintiff, Gulf, gave to the defendants proper and sufficient notice, as required by the contract, of its intention to exercise its option; and that even if the plaintiff, Gulf, was entitled to specific performance, the defendants should be compelled to execute and deliver to it a deed carrying a general warranty but without covenants of title.

The evidence is not in dispute and may be stated thus: By an agreement dated January 9, 1952, the defendants, Theresa Freitas Hill and Jack Marvin Hill, leased to Gulf a lot of land at the northeast corner of Thirty-sixth street and Colley avenue, in the city of Norfolk, for a term of five years commencing January 15, 1952, and ending January 14, 1957, at a monthly rental of $135. The lease carried this provision:

"In consideration of the execution of this lease and rentals to be paid thereunder the Lessors hereby give the Lessee, its successors and assigns, an option to purchase the premises herein leased at any time during the six (6) months period beginning July 15th, 1956 and ending January 14th, 1957, for the sum of Seventeen Thousand Dollars ($17,000.00). *Upon written notice to be mailed to Lessors by Lessee* not later than December 14th, 1956 that the latter will exercise its option to purchase, subject to good marketable title * * *. The Lessee shall have sixty (60) days from *date of mailing of notice* to Lessors that Lessee will exercise its option to purchase, in which to approve title and if same is satisfactory to Lessee, then Lessors agree to execute and deliver to Lessee by *Warranty Deed a good marketable title* to said premises * * *." (Emphasis added.)

While the lease recited that the lessors were "of Norfolk," it did not give their address or addresses in that city.

During the term of the lease Gulf regularly paid the monthly rentals by its checks payable jointly to the lessors. From January 7, 1952, until December, 1954, these checks were mailed to the

payees at "715 Shirley Street, Norfolk, Virginia," which was the address of Mrs. Hill. From December, 1954, until the end of the lease the checks were sent to the lessors at "115 Talbot Hall Road, Norfolk 5, Virginia," which was the address to which Mrs. Hill had moved. She testified that this change was made at her request. Each of the checks was mailed in a conventional window envelope showing the names and addresses of the payees; each was received and endorsed by the two payees.

Although Gulf had not been notified of the fact, Jack Marvin Hill, who is the son of Theresa Freitas Hill, had not resided at her address at any time during the term of the lease. He was married and lived at his home which at the time the lease was executed was on New Hampshire avenue, but during the latter part of the term was at 1114 Whiting street, both in the city of Norfolk.

On December 14, 1956, a representative of Gulf, at its Philadelphia office, mailed to the defendants by registered mail, "Return Receipt Requested," a letter notifying them of its intention to exercise its option to purchase the property at the stipulated price of $17,000. The envelope carrying this letter was addressed: "Mrs. Freitas Hill and Mr. Jack Marvin Hill, 115 Talbot Hall Road, Norfolk 5, Virginia." This was the identical way in which the monthly rental checks had been mailed, the address to which they had been sent, and at which they had been received during the last two years of the term of the lease.

The postmarks on this envelope showed that it was mailed from Philadelphia on December 14 and received at Norfolk on December 15. The Hills did not receive this letter and it was finally returned to the sender on or about December 31. There were markings on the envelope which according to the evidence indicated that a carrier had attempted to deliver the letter at the given address on December 17 and 18, but receiving no response, had left there notices indicating his ineffectual efforts to make delivery.

Mrs. Hill testified that although she was at her home a part of the time on both December 17 and 18, she did not receive the notices which the postman had left there indicating his ineffectual attempts to deliver the letter to her. She said that she had on the porch of her residence a mailbox in which ordinarily mail addressed to her was deposited, but that she found therein no such notice.

Under date of December 22 the attorney for the lessors wrote Gulf a letter referring to the fact that there had been negotiations

for a renewal of the lease, but that the lessors had decided not to renew. A representative of Gulf responded that it had notified the lessors of its intention to exercise its option to buy the property. The lessors say that this was the first information they had received that Gulf had attempted to notify them of its intention to exercise its option.

■ First, as to the sufficiency of the notice. The defendant lessors contend that the letter was ineffective as a proper notice because, they say, it was not received by them and "the option requires actual notice." The ready answer to this contention is that the contract between the parties does not require "actual notice," nor does it specify that the notice is to be ineffective unless and until it is received by the lessors. The lease provides that "upon written notice to be mailed to Lessors by Lessee" of its intent to do so, the lessee may exercise its option to purchase. Again, it specifies that the lessee shall have sixty days from the "date of mailing of notice" within which to exercise its option. Hence, it clearly appears that the parties agreed that a notice properly mailed was to be effective.

■ Here, the written notice was "mailed to Lessors by Lessee" and the determinative question is whether the manner of the mailing, that is, by registered mail with a return receipt requested, meets the requirement of the stipulation. The defendant lessors argue that it does not, because they say that in requiring a return receipt the sender lessened the likelihood that the addressees would receive the notice, whereas had it been sent by ordinary mail the carrier would have left it in Mrs. Hill's mailbox and she probably would have received it. We do not agree with this contention. The stipulation merely required that the notice "be mailed" to the lessors by the lessee, and the language is broad enough to include mailing by either method. Moreover, it is a matter of common knowledge that registered mail is generally regarded as a better method of insuring delivery than ordinary mail.

In *Westmoreland* v. *General Accident Fire, etc., Assur. Corp.*, 144 Conn. 265, 129 A. 2d 623, 626, it was held that notice of the cancellation of a policy, "by mailing to the named insured" at the address given in the policy, was complied with where the notice was sent by registered mail, return receipt requested. It was there pointed out that the provision was broad enough to cover "all the kinds of mail which are commonly used to convey messages."

In *Sorenson* v. *Stowers*, 251 Wis. 398, 29 N. W. 2d 512, 514, it was held that the requirement that a notice be "sent by mail" was met by sending by registered mail. It was there pointed out that registered mail is considered the safer way to insure delivery. See also, *Fields* v. *Western Millers Mut. Fire Ins. Co.*, 182 Misc. 895, 50 N. Y. S. 2d 70; *Saffold* v. *Fellows*, 219 App. Div. 865, 221 N. Y. S. 197.

The contrary view taken in *Werner* v. *Commonwealth Casualty Co.*, 109 N. J. L. 119, 160 A. 547, was expressly rejected by the Connecticut court in *Westmoreland* v. *General Accident Fire, etc., Assur. Corp., supra.*

We hold that in the present case when the notice was sent by registered mail, return receipt requested, it was "mailed" within the meaning of the stipulation in the lease.

The contention is next made that the notice was ineffective as to the defendant, Jack Marvin Hill, because he did not live at his mother's address to which the letter was sent; that he was listed both in the city and telephone directories, and that his proper address could easily have been ascertained by the lessee.

But there was no showing that the lessee, Gulf, knew that this defendant did not live at his mother's address. During the whole term of the lease, extending over a period of five years, checks sent to him at his mother's address were received and endorsd by him. Clearly, then, the lessee had the right to rely upon this as his proper address to which the notice should have been sent.

Next, it is argued that specific performance should not be required of the defendant, Jack Marvin Hill, because his wife had not signed the lease. But she is not a party to the suit and specific performance is not asked against her. Her outstanding contingent dower interest is no obstacle to specific performance where, as here, the vendee lessee is willing to accept a deed from him without his wife's signature, and asks no abatement in the purchase price. *Mooers* v. *Wilson*, 183 Va. 910, 919, 33 S. E. 2d 791, 794.

[5] The defendants' final contention that they were not required under the contract to execute a deed with the usual covenants of title is equally without merit. Under the terms of the contract it was agreed that should the lessee exercise its option to purchase the property, the lessors would execute and deliver to the lessee "by Warranty Deed a good marketable title to said premises."

As is said in 55 Am. Jur., Vendor and Purchaser, § 315, p. 747,

"\* \* \* in every contract for the sale and land the vendor, unless he acts in a ministerial or fiduciary capacity, or unless there is something in the terms of the contract or attendant circumstances which shows a contrary intention, impliedly engages not merely to give a good title, but also to convey by a deed containing the usual covenants of title." We have adopted that view in this jurisdiction. See *Bond* v. *Crawford*, 193 Va. 437, 448, 69 S. E. 2d 470, 477, and cases there cited.

For these reasons the decree appealed from is

*Affirmed.*