# Richmond

## CITIES SERVICE OIL COMPANY v. C. E. ESTES, ET AL.

June 12, 1967.

Record No. 6440.

Present, All the Justices.

R. Harvey Chappell, Jr. (Frank C. Bedinger, Jr.; Bedinger & Bedinger; Christian, Barton, Parker, Epps & Brent, on brief), for appellant.

Ivy P. Blue, Jr.; N. Leslie Saunders, Jr. (A. G. Hutcheson; Blue, Gordon, Saunders & Neblett, on brief), for appellees.

I'ANSON, J., delivered the opinion of the court.

The issue presented in this case is whether the right of first refusal to purchase certain property granted to Cities Service Oil Company under a lease applies to a public judicial sale so that Cities Service may acquire the property at the price offered by the highest bidder.

On October 5, 1954, O. H. Mull and Elsie H. Mull, his wife, leased certain property in Chase City, Virginia, to Cities Service for use as a gasoline filling station for a term of fifteen years with an option to renew the lease for an additional five years. The lease was duly recorded in the clerk's office of the Circuit Court of Mecklenburg County.

The first paragraph of section 13 of the lease granted Cities Service an option during the original term of the lease or any extension thereof to purchase the property for $45,000. The second paragraph of the section granted Cities Service a right of first refusal, and reads in part as follows:

> "In the event that the Landlord at any time during the original or extended term hereof shall receive a bona fide offer satisfactory to it for the sale of the above described premises * * * the Landlord shall give the Tenant written notice of the terms and conditions of any said offer and the Tenant shall have the option and first refusal for thirty days after receipt of such notice within which to elect to purchase * * * on terms of said offer. If Tenant shall elect to purchase * * * the premises pursuant to the option and first refusal herein granted, it shall give written notice of such election to the Landlord within such thirty-day period, and upon such notice being given, the transaction shall be closed within sixty days subsequent to Tenant's notice of election. Upon such closing, the Landlord shall deliver to Tenant * * * a full covenant warranty deed conveying a good and marketable title, free and clear of all liens and encumbrances * * *."

O. H. Mull died intestate on January 13, 1962, survived by his wife, Elsie H. Mull (now Elsie M. Bagley), five adult children and an infant child, Herman R. Mull. At his death Mull owned several parcels of real estate, including the piece which is the subject of the lease with Cities Service.

On May 28, 1965, Elsie M. Bagley, as guardian of Herman R. Mull and in her own right, filed a bill of complaint in the court below praying among other things for a decree authorizing and directing a sale of the real estate Mull died seized and possessed of, and that the property under lease to Cities Service be sold subject to the terms of

the lease. In their answer, the adult defendants joined in the prayer of the bill, and a guardian ad litem was appointed to represent the interest of the infant.

The cause was referred to a commissioner in chancery who, after hearing the evidence, recommended that the property be sold. The chancellor, by his decree, confirmed the commissioner's report, appointed special commissioners to sell the property at public auction, and directed that the Cities Service property be sold "subject to any leases existing against * * * subject property." The notices of sale of the Cities Service property similarly stated that the property was to be sold subject to all provisions contained in the recorded lease between O. H. Mull and Cities Service.

The special commissioners reported to the court on December 6, 1965, that the parcels were offered for sale at public auction on November 27, 1965; that the sale was well attended and the bidding was spirited; and that the highest and last bid on the property under lease to Cities Service was made by C. E. Estes in the amount of $31,100.

Cities Service, which had not been made a party to the suit, filed a petition on December 7, 1965, praying that the sale to Estes not be confirmed. It asserted that under the second paragraph of section 13 of the lease it had a right of first refusal to purchase the leased premises, and that it had thirty days from November 27, 1965, in which to exercise its right and purchase the property for the amount of the highest bid. Within the thirty-day period, Cities Service notified the court and all parties in interest that it exercised its right to purchase the property for $31,100.

In a written opinion, the chancellor held that the lessee's rights under section 13 of the lease ran with the land and were binding upon the heirs; that the first paragraph of section 13 gave Cities Service an option to purchase the property at any time during the original term or extension of the lease for $45,000; that the lessee's right to purchase under the second paragraph was conditioned upon the happening of certain events; and that a judicial sale was not one of the events which rendered the right of first refusal exercisable.

The heirs of O. H. Mull, being satisfied with the price the leased property brought at the sale, have not filed a brief in this appeal.

Cities Service assigns as error the chancellor's interpretation of the second paragraph of section 13 as not applicable to a judicial sale.

Estes, the only other party to this appeal, does not question that

the Mull heirs are bound by the terms of the subject lease. See Code §§ 8-682, 8-701, 1957 Repl. Vol.; 32 Am. Jur., Landlord & Tenant, §§ 301, 304, pp. 281, 283. His position on this appeal is that a judicial sale is not within the terms of the second paragraph of section 13.

The chancellor correctly viewed the right of first refusal in paragraph 2 of section 13 of the lease as different from the option to purchase in the first paragraph. A right of first refusal is distinguished from an absolute option in that the former does not entitle the lessee to compel an unwilling owner to sell. Instead it requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the right of first refusal. *Barling* v. *Horn*, 296 S. W. 2d 94, 98 (Mo., 1956). See generally, Annot., 8 A. L. R. 2d 604 (1949); Annot., 34 A. L. R. 2d 1158 (1954); 32 Am. Jur., Landlord & Tenant, § 299, pp. 278, 279; 91 C. J. S., Vendor & Purchaser (1967 Cum. Supp., § 19.1, p. 113).

[1] The question whether a judicial sale is the occasion for the exercise of a right of first refusal is one of first impression in Virginia and has been considered by few other courts.

Cities Service relies on the case of *Price* v. *Town of Ruston*, 171 La. 985, 132 So. 653 (1931), which held that the right of first refusal does apply to a judicial sale. There Arilla A. Price permitted the Elks' Lodge to construct a third floor on her building. The lodge agreed that in the event it "shall desire to sell" the third story, Mrs. Price "shall be given the option and preference of purchasing the same at the price at which it shall be offered." The lodge borrowed construction money and secured the loan by a mortgage on the third floor. Upon default on the loan, suit was instituted to foreclose the mortgage and the property was sold by the sheriff to the town of Ruston, the last and highest bidder. The heirs of Mrs. Price tendered the amount of the highest bid but it was refused.

The court interpreted the expression "in the event the party of the second part shall desire to sell" to include a sale, whether it be made willingly or because of financial inability to hold the property. Thus it held that the right of the Price heirs to purchase the property prevailed over the highest bidder at the sale.

In affirming the judgment of the trial court and rejecting the argument of the town of Ruston, the court said:

"It is argued in appellant's brief that the only way in which the Price heirs could have availed themselves of their so-called option,

at the sheriff's sale, was to make a bid higher than that for which the property otherwise would have been sold. That construction of the option would make it worthless in case of a forced sale; because, regardless of the contract, Mrs. Price and her heirs and assigns have the right, in common with every body else, to make the last and highest bid for the property at a forced sale. * * *

"It is suggested that the interpretation which the district judge has given to the clause in question made it utterly useless and unavailing for anyone except the Price heirs to bid on the property at the sheriff's offering of it for sale; but that is not quite correct, because the Price heirs were not bound to take the property at the highest price bid, and would have not taken it if the price had not been satisfactory to them." 171 La. at 991-992, 132 So. at 656.

In *McCarter v. York County Loan Company*, 14 Ont. L. R. 420 (1907), defendant company leased a dwelling house to the plaintiff, McCarter. The lease contained the following clause:

"Provided that if the lessors obtain during the said term an offer to purchase the said premises, before accepting the same the lessee shall be given the option of purchasing on same terms as in said offer."

Subsequently an order was entered declaring the company insolvent, and a liquidator, who was appointed to wind up the company's affairs, sold the premises without giving plaintiff an opportunity to exercise his option. The court held that the order did not in any way cut down the rights of the plaintiff or change his position; that the liquidator was authorized to sell the premises, but only subject to the terms and conditions of the lease; and that he was bound to submit to the plaintiff, who had not waived his rights, the offer received.

Estes relies on *In re Rigby's Estate*, 62 Wyo. 401, 167 P. 2d 964 (1946), and *Draper v. Gochman*, 400 S. W. 2d 545 (Tex., 1966), reversing, 389 S. W. 2d 571 (Tex. Civ. App., 1965). The court in *Rigby's Estate* held that the right of first refusal conferred by a lease was not exercisable at a judicial sale. The administrator of the lessor's estate sold the property to pay the debts of the estate and the expenses of administration. The lease provided that the lessee had the first right to purchase the property on the terms that the lessor "shall then demand." The court said that upon the death of the lessor, title to the property passed directly to the heirs, and the administrator was not selling on their behalf. Since the court viewed the adminis-

trator as being neither an agent of the heirs nor as deriving any power from them, it concluded that the judicial sale was not a voluntary sale as to which the lessor intended to give the lessee the right of first refusal.

In the recent case of *Draper v. Gochman, supra,* the Texas Supreme Court held that the right of first refusal given to a lessee in the event that the lessor "desires to sell or dispose of his interest" did not apply to an involuntary sale by foreclosure under a deed of trust. The court pointed out that a foreclosure sale is made whether or not the owner desires to sell.

[2] We agree with the reasoning of the Louisiana court in *Price, supra,* and the Ontario court in *McCarter, supra.* Since a right of first refusal is inserted in a lease for the benefit of the lessee, we must interpret it with that purpose in mind. *First Nat. Bank v. Roanoke Oil Co.,* 169 Va. 99, 113, 192 S. E. 764, 770 (1937). The chancellor in his written opinion recognized that the purpose of the rights granted in section 13 of the lease was to protect the expenditures made in the premises by the lessee and the good will the gas station operation had established at the location. However, he was of the opinion that adequate protection was afforded by paragraph one of section 13, which contained the option to purchase at any time during the term of the lease or any extension thereof.

If Cities Service had considered that the first paragraph of section 13 provided it with adequate protection, it probably would not have insisted on including the second paragraph. Under the second paragraph Cities Service obtained greater protection than would be afforded by its right in common with anyone else to make the highest bid at a sale. More important, however, the presence of the specified price option in the first paragraph does not provide a basis for distinguishing between a private sale and a judicial sale under the second paragraph.

Estes argues that applying the right of first refusal to judicial sales would depress the bidding at such sales because the holder of the right of first refusal will not have to participate in the bidding, and other prospective buyers will not want to bid for property which can be taken from them within thirty days after the sale. However, as the court in *Price* pointed out, it does not follow that it is useless for anyone but the holder of the right of first refusal to bid. The holder of the right is not bound to purchase, but instead he has an election. If he decides not to buy because the bid is too high, then the high bidder may acquire the property.

[3] Estes' final argument is that the requirement in paragraph two of section 13 that the lessor furnish a general warranty deed indicates that the parties did not contemplate a judicial sale, for in such sale only a special warranty deed would be executed. However, in the light of the purpose for which Cities Service obtained the right of first refusal, and since there is no ground to distinguish a judicial sale from a private sale in terms of such purpose, we do not find the provision for a warranty deed indicative of an intention to exclude judicial sales. Where Cities Service, for whose benefit the general warranty requirement was inserted, is willing to accept a lesser deed, the requirement presented no obstacle. *Cf.*, *Hill* v. *Gulf Oil Corporation*, 200 Va. 287, 292, 105 S. E. 2d 625, 628 (1958).

For the reasons stated, we hold that the right given to Cities Service under the second paragraph of section 13 of the lease does apply to the judicial sale in this case. Hence the decree is reversed and the cause remanded with directions to the court below to permit Cities Service to exercise its right under the subject lease and to purchase the property from the special commissioners for the sum of $31,100.

*Reversed and remanded.*