FORET, Judge.
L. Russell Keene, II (Plaintiff), brought this action to have a certain sale of immovable property rescinded and set aside, and for specific i>erformance of a contract granting him a right of first refusal on that property[1]. Defendants are First Federal Savings & Loan Association of Alexandria (First Federal), the owner and vendor of the property, and the purchasers of the property, the Bayou Partnership and its individual partners, Warren S. Williams (Williams), F. William Johnson, Jr. (F. Johnson), Edward B. Wilkey (Wilkey), James Woodard Johnson (J. Johnson), and James Robert Adams (Adams).
The trial court, after trial, rendered judgment in favor of plaintiff ordering the sale entered into between defendants rescinded and set aside. The judgment further ordered First Federal to convey the ownership of the projjerty to plaintiff on the same terms and conditions as those contained in *204 the sale between it and the other defendants.
Defendants appeal suspensively and de-volutively from the trial court’s judgment and raise the following issues:
(1) Whether the trial court committed manifest error in finding that plaintiff had acquired a valid right of first refusal from First Federal;
(2) Whether the trial court committed manifest error in finding plaintiff to be entitled to the remedy of specific performance;
(3) Whether defendants, who purchased the property, were entitled to rely on the “public records doctrine”.
FACTS
The property in question consists of an apartment complex named the “Bayou Wood Villa Apartments”, located near Sul-phur in Calcasieu Parish, and the land on which it was built. First Federal financed construction of the complex by means of a loan of $850,000 made to Joe E. Schaeffer (Schaeffer) and Wilbert R. Wilder (Wilder), the original owners and developers of the property. Schaeffer and Wilder defaulted on the loan shortly after construction was completed and they executed an assignment of the rents and revenues to First Federal in March, 1975. The property was then placed under the supervision of Henry C. Voorhies, III (Voorhies), one of First Federal’s vice presidents, who employed Darrell Felds of Pacemaker Realty to manage it.
Plaintiff learned of the financial problems associated with the property and began negotiating with Voorhies for its purchase. First Federal attempted to arrange a sale from the owners to plaintiff, but problems developed regarding title to the property and the sale was never completed. First Federal then brought an action for a declaratory judgment in an effort to cure the defects in title. However, before that action was tried, First Federal brought an action to enforce its mortgage by executory process, and the property was subsequently seized and sold to it at a sheriff’s sale.
First Federal and plaintiff had entered into an agreement on November 4, 1975, in which it granted plaintiff a right of first refusal to purchase the property should foreclosure become necessary. After the sheriff’s sale, First Federal notified plaintiff that it would be actively soliciting bids for the purchase of the property. It placed advertisements in several newspapers around the State setting May 10, 1976, as the deadline for submitting such bids, but later rejected all bids received.
It was during this period of time that First Federal began negotiations with Adams for the purchase of the property by Bayou Partnership, on whose behalf he was acting. An agreement to purchase and sell was entered into by Adams and First Federal on June 4, 1976. Voorhies notified plaintiff on June 7, 1976 of this agreement by handing plaintiff a letter with the agreement attached thereto. The letter stated that plaintiff would have until June 14, 1976 to exercise his right of first refusal. An attorney representing First Federal extended that deadline by one day. Plaintiff was unable to exercise his right of first refusal within that time period, and notified First Federal that he would decide whether to do so by 5:00 P.M. on June 23, 1976. First Federal refused to allow plaintiff this extra time within which to make his decision, and sold the property to Bayou Partnership on June 21, 1976.
Plaintiff instituted this action on August 5, 1976, alleging that variations existed between the terms and conditions for the purchase of the property by him, contained in the letter delivered to him by Voorhies, and those contained in the agreement to purchase and sell executed by Voorhies and Adams. He further alleged that First Federal had acted unreasonably in allowing him just seven days, including one weekend, to: obtain a clarification of the terms and conditions under which the property was being offered for sale to him; obtain financing for the purchase; and, to determine the condition of the property at that time.
Several defendants filed exceptions that were either cured by actions of the plain *205 tiff, or overruled by the trial court. Defendants’ answers contained various allegations concerning the validity of any agreement entered into by plaintiff and First Federal purportedly granting him a right of first refusal on the property, and that any such agreement could be avoided on the basis of the public records doctrine. Defendants also alleged that plaintiff had failed to timely and/or effectively accept any offers to sell the property made to him. Finally, several defendants filed a motion for summary judgment that was denied by the trial court.
VALIDITY OF PLAINTIFF’S RIGHT OF FIRST REFUSAL
Defendants contend that the trial court committed manifest error in finding that plaintiff had acquired a valid right of first refusal from First Federal. They argue that the agreement entered into by plaintiff and Voorhies on November 4,1975, fails to state the price at which the property would be offered for sale to him, if First Federal decided to sell it. That agreement provides the following with respect to plaintiff’s right of first refusal:
“5. If First Federal forecloses on the Bayou Wood Villa project. Mr. Keene will have the right of first refusal on purchasing and financing the project with First Federal.”
Defendants rely on the provisions of LSA-C.C. Articles 2462 and 2464, arguing that these articles require that the price of an option or right of first refusal agreement be fixed, certain and determined by the parties. However, Crawford v. Deshotels, 359 So.2d 118 (La.1978), found that there were differences between an option and a right of first refusal, and that the provisions of LSA-C.C. Article 2462 were inapplicable to situations involving such a right. Crawford stated, on page 122, that:
“The article and the jurisprudence on which relator relies, however, are not applicable here, for there is not here following “the purchase of such option” — or in this case entry of the contract — a continuing right or option to accept (or reject) an extant offer or promise to sell — as contemplated by Article 2462. Rather there is here what is more commonly described as a right of first refusal, or as the contract says, a right to be afforded a “first chance to buy” at a price equal to any bona fide offer which McDaniel should receive and be interested in accepting.” (emphasis ours)
LSA-C.C. Article 2464 is also inapplicable to agreements involving a right of first refusal as that article deals specifically with the element of price in contracts of sale. Thus, we find no merit to defendants’ contention.
As was noted in Crawford, the common meaning of a right of first refusal is that the holder of the right will be afforded a first chance to buy the property, on which the right was granted, at a price equal to any bona fide offer which the grantor of the right should receive and be interested in accepting for that property.
Defendants make much of the fact that Voorhies sent plaintiff a letter on February 13, 1976, in which he stated that plaintiff would be given a copy of the highest bona fide bid and given, “. . . the opportunity to exceed the amount or cancel your right of ‘first refusal’ ”. They argue that this shows that there was no meeting of the minds between Voorhies and plaintiff as to what the agreement entailed. However, both plaintiff and Voorhies testified that it was their understanding that under the right of first refusal all plaintiff had to do was wait until a bona fide offer, acceptable to First Federal, was made by a third party, and then announce whether he would go ahead and exercise his right by matching that offer or decline to do so.
Plaintiff introduced in evidence a letter dated June 7, 1976, addressed to him and signed by Voorhies. That letter acknowledges the existence of plaintiff’s right of first refusal, and offers to sell him the property under the identical price, terms and conditions as stated in the agreement to buy and sell executed by Adams and First Federal. The agreement to buy and *206 sell itself contains a provision recognizing the existence of plaintiff’s right of first refusal. Finally, the minutes of a meeting of the Board of Directors for First Federal held on June 4, 1976, shows that the Board recognized the right of first refusal given plaintiff and that he should be allowed time to match the offer made by Adams.
The trial court’s finding that a valid right of first refusal had been granted plaintiff by First Federal is not clearly wrong. We find that defendants’ contention that the letter of June 7, 1976 contained a new offer to sell made to plaintiff, independent of the right of first refusal granted to him, is without merit. Thus, there is no need for any discussion of defendants’ arguments concerning the law of “offer and acceptance”.
PLAINTIFF’S RIGHT TO SPECIFIC PERFORMANCE OF THE RIGHT OF FIRST REFUSAL
Defendants contend that the trial court committed manifest error in granting plaintiff specific performance of his right of first refusal because he had given First Federal $3,000 at the time the agreement granting him the right was executed. They argue that this deposit was earnest money giving either party the liberty to recede from the agreement under the provisions of LSA-C.C. Article 2463.
A review of the pleadings filed by defendants shows that they failed to raise this issue therein, and that the trial court was neither asked to make, nor made, any finding regarding this issue. Ordinarily, we will review only those issues submitted to the trial court.[2] However, in the interest of justice, we will exercise the authority given us by LSA-C.C.P. Article 2164 and decide this issue.
LSA-C.C. Article 2463 provides:
“Art. 2463. Earnest money, effect
Art. 2463. But if the promise to sell has been made with the giving of earnest, each of the contracting parties is at liberty to recede from the promise; to wit: he who has given the earnest, by forfeiting it; and he who has received it, by returning the double.”
We find that LSA-C.C. Article 2463 is inapplicable to a unilateral contract such as the one granting plaintiff a right of first refusal. The article, by its very terms (“each of the contracting parties”), appears to contemplate situations involving a bilateral contract to sell and purchase.
An argument, similar to that made by defendants, was rejected by this Court in Edco Properties v. Landry, 371 So.2d 1367 (La.App. 3 Cir. 1979), writ denied, 375 So.2d 945 (La.1979). Edco involved a lease-option agreement which provided that the monthly lease payments made by Edco Properties were to be applied to the sale price, if it exercised its option to buy the immovable property from Landry. Edco Properties decided to exercise its option, but Landry refused to sell the property to it. The trial court ordered Landry to convey the property to Edco Properties under the terms contained in the lease-option agreement, and Landry appealed. In this Court, Landry argued that the monthly lease payments constituted earnest money, under LSA-C.C. Article 2463, allowing either party to recede from the agreement.
Edco noted the following observations made in Moresi v. Burleigh, 170 La. 270, 127 So. 624 (1930), found at 127 So. 627:
“ ‘In an option contract, the optionee acquires no rights in the land or the subject-matter optioned. There is no transfer of title. It is simply a contract by *207 which the owner grants the optionee the right to purchase the thing at a fixed price and within a fixed time. Davis v. Roseberry, 95 Kan. 411, 148 P. 629, 3 A.L.R. 566; Ide v. Leiser, 10 Mont. 5, 24 P. 695, 24 Am.St.Rep. 17.
‘The option is a contract preliminary to an agreement to purchase. When exercised it ceases to exist, a new contract arising, which is enforceable against either party. There is no provision for the giving of earnest money with an option. The right acquired by an optionee is an unqualified right to purchase if he so elect. He can release himself without a forfeit by simply failing to exercise the right acquired.’ ” (emphasis ours)
Edco then stated, on page 1370 that:
“..., it is clearly inconsistent with the nature of an option agreement to presume that — in the absence of an express stipulation to the contrary — the parties to the contract intend for the price paid for the option to represent a relinquishment of the option holder’s right to specific performance, and a reservation of the option grantor’s right to recede from the contract. A party who secures an option to buy is merely securing the right to compel the grantor to sell at his (the option holder’s) discretion. If the consideration paid for such an option was to be presumed to give the grantor the right to refuse to sell, the option would serve no legal function.” (citations omitted)
This reasoning applies with equal force to situations involving the right of first refusal. The right of first refusal would serve no legal function, if it were presumed that the consideration paid for that right gave the grantor the ability to withdraw from the agreement and sell the property to a third party.
It is our opinion that LSA-C.C. Article 2463 does not apply to an agreement granting a right of first refusal in the absence of an express stipulation that the consideration therefor is intended to represent earnest money. There was no such stipulation in the agreement entered into by plaintiff and First Federal.
Specific performance of a right of first refusal was allowed in both Crawford, supra, and Price v. Town of Ruston, 171 La. 985, 132 So. 653 (1931), where the latter court stated at 132 So. page 656 that:
“Article 1926 gives the obligee the option, in case of a breach of contract, either to sue for damages or to sue for specific performance if the case is one which admits of specific performance. Article 1927 declares that ordinarily a breach of contract entitles the party aggrieved to an action only for damages, but that, where damages would not be adequate compensation, and the party breaching the contract has the power to perform it, he may be constrained to a specific performance. There is nothing in these articles of the Code to deprive the plaintiffs of a right of action for specific performance of the contract in question. An action for damages would not be appropriate, because it would be impossible to calculate the amount of damages that would compensate the plaintiffs for a breach of the contract. But, as a matter of fact, the plaintiffs are not complaining of a breach of the contract. They are merely trying to avail themselves of a right given to them by the contract.”
There is no merit to defendants’ contention that the remedy of specific performance is unavailable to plaintiff because the property was sold to a third party. Price granted specific performance to plaintiffs therein where the immovable property, the top floor of a building, had been sold at a sheriff’s sale to a third party. Here, the trial court found that the remedy of damages would be inadequate and that First Federal could still comply with its contract with plaintiff. We agree.
BAYOU PARTNERSHIP’S ALLEGED RELIANCE ON THE “PUBLIC RECORDS DOCTRINE”
Defendants allege that Bayou Partnership was entitled to rely on the “Public Records Doctrine” in purchasing the property from First Federal. We agree. However, we fail to see how this benefits de *208 fendants in any manner. The evidence clearly shows that the agreement granting plaintiff a right of first refusal was properly recorded in the • conveyance records of Calcasieu Parish on January 21, 1976, some five months before Bayou Partnership attempted to purchase the property. Defendants admit this in their brief. There is no merit to defendants’ contention.
For the above and foregoing reasons, the judgment of the trial court is affirmed.
All costs of this appeal are assessed against defendants-appellants.
AFFIRMED.

. Plaintiff, in his petition, also attempted to set forth a cause of action for monetary damages and an accounting of the revenues produced by the property. However, pursuant to an agreement between all parties involved in this litigation, the trial court dismissed these claims without prejudice.

. Rule IX-A of the Uniform Rules — Court of Appeal provides:
“RULE IX-A. SCOPE OF REVIEW
The scope of review in all cases within the appellate and supervisory jurisdiction of the Courts of Appeal shall be as provided by Art. 5, § 10(B) of the Louisiana Constitution of 1974 and Article 2164 of the Louisiana Code of Civil Procedure. Ordinarily, however, the Courts of Appeal will review only issues which were submitted to the trial court and which are contained in the specification of errors in the briefs or in an application for writs, unless the interest of justice clearly requires otherwise. Adopted, effective Dec. 1, 1977.”