FRED W. JONES, Jr., Judge.
An Act of Sale executed by M. H. Marr on October 4,1946, conveying some 90 acres *255 of land in Caddo Parish to 0. G. Collins, Sr., contained the following clause:
“As a further consideration for this deed, it is agreed and understood between the parties hereto that if 0. G. Collins or his heirs shall desire to lease, sell, or otherwise dispose of the above described land, he or they shall first offer same in writing to M. H. Marr, or his heirs, who shall have ten days after the receipt of such written notice within which to accept or reject same. If Marr, or his heirs, shall elect to purchase, he shall notify Collins, or his heirs, in writing of such election within ten days of receipt of said offer above mentioned and thereafter shall have ten days within which to examine title. Within the ten day period allowed for examination of title, Marr, or his heirs, shall either approve and accept title thereto or reject same.
“In the event Marr or his heirs shall fail or neglect to notify Collins or his heirs within ten days after said property is offered him or shall reject such offer or shall fail or neglect to approve title within the additional ten day period, then and in such event Collins or his heirs shall have the right to lease, sell, or otherwise dispose of said property to any other person upon the same or higher (but not lower or different) terms as offered to Marr.”
In 1969 0. G. Collins, Jr. acquired by inheritance his mother’s undivided one-half interest in the described property and in 1972 acquired by inheritance his father’s undivided one-half interest.
In 1975, David C. Brignac was recognized as a special legatee under the will of 0. G. Collins, Jr. and sent into possession of the described Caddo Parish property.
By letter dated February 5, 1979, Brig-nac’s attorney advised Marr that his client had received and contemplated accepting an offer of $75,000 for a portion of the described property but, pursuant to the terms of the 1946 deed, was offering “first refusal” to Marr on the same terms and conditions as the offer.
On February 15, 1979 Marr filed this declaratory judgment action against Brignac and Mrs. Louney Hebert, executrix of the Succession of O. G. Collins, Jr. and decedent’s residuary legatee, seeking to nullify the testamentary disposition to Brignac and to compel the executrix to tender the property to plaintiff in accordance with the “first refusal” clause in the 1946 deed.
After the filing of responsive pleadings, pursuant to a joint stipulation the case was submitted to the trial judge for decision upon the basis of the pleadings, an abstract of title and briefs filed on behalf of the parties.
Concluding that the “first refusal” clause in the 1946 deed did not apply to testamentary bequests, and that Brignac was an “heir” within the meaning of the language contained in the clause, the trial judge rejected plaintiff’s demands.
Plaintiff appealed this judgment, contending that the bequest by O. G. Collins, Jr. of the immovable property in question to Brignac, who was not a legal heir of the testator, violated the “first refusal” clause of the 1946 deed, since Collins “otherwise disposed” of the property without first offering it to Marr.
Finding, for the reasons hereinafter assigned, that the “first refusal” clause in the 1946 deed was not intended by the parties to apply to testamentary bequests, we affirm the judgment of the district court.
We note, preliminarily, that the validity of “first refusal” clauses of the general nature of that under consideration has been recognized by the Louisiana Supreme Court in Price v. Town of Ruston, 171 La. 985, 132 So. 653 (1931) and Crawford v. Deshotels, 359 So.2d 118 (La.1978).
Turning to the specific clause involved here, the critical question is whether the parties intended the phrase otherwise dispose of to include testamentary bequests. In construing this phrase we are mandated to seek the intent of the parties, which intent “is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences.” *256 La.Civil Code Art. 1945. When doubt arises as to the meaning of certain words in a contract, they may be explained by referring to other words or phrases used in making the same contract. La.Civil Code Art. 1948.
Since the precise meaning of the phrase otherwise dispose of, taken alone, is not self evident, it is appropriate to search for the parties’ intended meaning within the context of the entire “first refusal” clause, which appears to contemplate the following sequence of events in its application:
(1) Collins (or his heirs) decides to lease, sell or otherwise dispose of the land or a portion thereof.
(2) Written notice is given to Marr (or his heirs) of that decision — with an offer to transfer the described tract to the recipient of the notice on the same terms and conditions as the offer.
(3) If Marr (or his heirs) elects to purchase, he shall notify Collins (or his heirs) of that decision in writing within a specified time.
(4) If Marr (or his heirs) does not exercise this right of “first refusal”, Collins (or his heirs) has the right to lease, sell or otherwise dispose of the property to any other person upon the same or higher terms as offered to Marr.
Viewed in its entirety, we do not discern in this “first refusal” clause any intent by the parties that it apply to testamentary dispositions. For example, the clause expressly gives Marr (or his heirs) the option to purchase the property upon the same terms and conditions as those contained in an offer from a third party. This obviously envisions some kind of onerous transfer of the property, rather than a testamentary bequest. Further, if the clause applies to a donation mortis causa, how could there be compliance with the notice requirements without leading to absurd consequences? Surely the parties did not intend that Marr be given an opportunity to substitute himself for another legatee in the will of the vendee, Collins, or that of his son!
Next, it is apparent from the reference in the “first refusal” clause to “0. G. Collins or his heirs” (emphasis added) that bequests to heirs do not fall within the ambit of otherwise dispose of.
Appellant argues that, since Brignac was not a universal legatee or legatee by universal title, he was not an “heir” under La.C.C. Art. 894. In answer to that argument, we agree with the trial judge that it would be both inappropriate and unrealistic to construe the word “heir” in this narrow, technical sense in our interpretation of the “first refusal” clause. The words of a contract are to be understood “in the common and usual signification.” La.C.C. Art. 1946. “Heir” is a general term which is commonly understood to encompass those who inherit by operation of law as well as those who inherit by virtue of testamentary dispositions. See Succession of Dinwiddie, 263 So.2d 739 (La.App. 4th Cir. 1972). Nothing in the “first refusal” clause under consideration indicates that the parties intended a more restrictive definition of “heir”. Consequently, the bequest to Brignac, who was thereby instituted an “heir”, did not require compliance with the “first refusal” clause in the 1946 deed.
For these reasons, we affirm the judgment of the district court dismissing plaintiff’s suit, at appellant’s cost.