771 So.2d 690 (2000)
Jerry W. GORUM
v.
The OPTIMIST CLUB OF GLENMORA, et al.
No. 99-1963.
Court of Appeal of Louisiana, Third Circuit.
August 30, 2000.
Writ Denied November 27, 2000.
*691 Scott Pias, Lake Charles, LA, Counsel for Plaintiff/Appellee Jerry W. Gorum.
Ricky Sooter, Provosty, Sadler, DeLaunay, Fiorenza & Sobel, Alexandria, LA, Herman Savoie, Jr., Sooter & Savoie, Alexandria, LA, Counsel for Defendants/Appellants H.K. Stanley and Carolyn Chevalier Stanley.
(Court composed of JIMMIE C. PETERS, GLENN B. GREMILLION, and ELIZABETH A. PICKETT, Judges).
PETERS, Judge.
Jerry W. Gorum and his wife, Addie Morgan Gorum, (hereinafter sometimes referred to as "the plaintiffs")[1] brought this action against the Optimist Club of Glenmora (the Optimist Club), an unincorporated association; Joseph Rivers, C.J. Myers, Clyde Myers, and Donald Parker, as members of the Optimist Club; H.K. Stanley, individually, and as a member of the Optimist Club; Stanley's wife, Carolyn Chevalier Stanley; John H. Monk and his wife, Fannie Todd Monk; and Milton D. Clark *692 and his wife, Maxine Soileau Clark. In the suit, the plaintiffs sought to have certain immovable property Mr. Gorum had conveyed to the Optimist Club transferred back to themselves and to recover damages for loss of use of the property, attorney fees, and costs of the litigation.
The matter is before us on appeal following a summary judgment in favor of the plaintiffs wherein the trial court recognized them as owners of the immovable property at issue and declared void any other transactions affecting the property. Although the trial court rendered the summary judgment against all of the named defendants, only H.K. and Carolyn Chevalier Stanley (hereinafter sometimes referred to as "the defendants") have appealed. For the following reasons, we affirm the trial court's judgment in all respects.

DISCUSSION OF THE RECORD
By a cash deed dated February 20, 1974, Mr. Gorum transferred two separate tracts of immovable property situated in Glenmora, Louisiana, to the Optimist Club. Both tracts are rectangular in shape, with one measuring 100 feet by 400 feet and the other 100 feet by 190 feet. As consideration for the sale, the Optimist Club paid Mr. Gorum $3,000.00 and agreed that he would be entitled to reacquire the property under specific conditions, which are summarized as follows:
1. In the event that the Optimist Club decided to sell the property in the future, Mr. Gorum was granted the first option to repurchase the property for $3,000.00 if no building had been constructed on the property at the time or for $3,000.00 plus the actual construction cost of the building if one had been constructed.
2. If the Optimist Club failed to construct a building on the property within three years from February 20, 1974, it agreed to offer to sell the property to Mr. Gorum for $3,000.00.
3. Within thirty days from the time the property ceased to be used for club functions, the Optimist Club was required to offer Mr. Gorum the opportunity to repurchase it for $3,000.00 if no building had been constructed on the property or for $3,000.00 plus the actual construction cost of the building if one had been constructed.
The cash deed specified that the property transferred had "valuable commercial development possibilities, and in light of this, both parties have expressly agreed to each and every condition of this sale as part and parcel of the consideration for this sale transaction."
On July 17, 1989, the Optimist Club executed a $5,000.00 promissory note in favor of Scott L. Stanley and secured the note with a mortgage on the property. Sometime thereafter, Scott L. Stanley endorsed the promissory note over to H.K. Stanley. On May 24, 1991, the Optimist Club transferred the property to H.K. and Carolyn Chevalier Stanley by a dation en paiement, the consideration for which was the forgiveness of the $5,000.00 debt evidenced by the July 17 promissory note. The defendants then remained record owners of all the property until November 22, 1997, at which time they executed two separate acts of donation wherein they donated the same 52 foot by 170 foot rectangular portion of the larger tract to John H. Monk and his wife, Fannie Todd Monk, by one act of donation, and to Milton D. Clark and his wife, Maxine Soileau Clark, by another act of donation.
Sometime toward the end of 1996 or early 1997, Mr. Gorum became aware of the May 1991 transfer to Mr. Stanley and filed this suit on June 10, 1998. All of the original defendants joined in filing peremptory exceptions of prescription and no cause of action in response to Mr. Gorum's suit. The trial court considered and rejected these exceptions after a hearing held on December 7, 1998, and signed a judgment to that effect on May 10, 1999.
*693 After the trial court rejected the exceptions, Mr. Gorum filed the motion for summary judgment at issue in this appeal, requesting "a Judgment in his favor as prayed for in the Petition."[2] After a hearing on the motion, the trial court rendered judgment (1) voiding the transfer from the Optimist Club to H.K. and Carolyn Chevalier Stanley as well as the transfers from the Stanleys to the Monks and the Clarks and (2) returning title to the property to the plaintiffs. The judgment is silent concerning the plaintiffs' claim for damages and attorney fees. As previously stated, only H.K. and Carolyn Chevalier Stanley have appealed.

OPINION
A motion for summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). The burden of proof remains with the plaintiffs in this case. See La.Code Civ.P. art. 966(C)(2). They are required to make a prima facie showing that they are entitled to summary judgment before the burden shifts to the defendants to present evidence demonstrating that material factual issues remain. See Tonubbee v. River Parishes Guide, 97-440 (La.App. 5 Cir. 10/28/97); 702 So.2d 971, writ denied, 97-3012 (La.2/13/98); 709 So.2d 747, cert. denied, 525 U.S. 858, 119 S.Ct. 142, 142 L.Ed.2d 115 (1998).
In support of their motion for summary judgment, the plaintiffs offered the testimony taken at the hearing on the exceptions, copies of discovery responses by the defendants, and Mr. Gorum's affidavit. The defendants responded by offering the affidavit of Joseph Rivers as well as copies of the various transfer documents involved in the previously mentioned transactions.
All of the evidence offered in support of and opposition to the motion for summary judgment establishes that only immaterial factual disputes exist and that the issue to be decided is basically a legal one. The evidence establishes that no significant structure was ever constructed on the property and none was on the property at the time it was transferred to Mr. Stanley,[3] that tennis courts were constructed but later converted to basketball courts, that the primary use of the property was as a parking area for the rodeos sponsored as fund-raisers by the Optimist Club, and that the Optimist Club had been inactive for at least five years at the time of the trial on the exceptions in December of 1998. Additionally, the defendants offered no evidence to dispute Mr. Gorum's assertion that he initially transferred the property to make it available for the construction of a community center and that he was unaware of the transfer to Mr. Stanley until late 1996 or early 1997. Additionally, it is not disputed that the original transfer consideration of $3,000.00 was significantly less than the property's actual value. In granting the summary judgment, the trial court made no comment concerning its factual findings, and it is not clear which of the three reacquisition clauses it relied upon. Therefore, it is necessary that we consider the effect of all three.
The defendants argue in one of their assignments of error that all of the reservation provisions of the original contract are null and void as a matter of law because they contain no time period in which the plaintiffs must accept or reject the offer to repurchase. They argue that the supreme court's decision in Keene v. *694 Williams, 423 So.2d 1065 (La.1982), supports their position. We disagree. In Keene, the issue was whether the individual in whose favor the first right of refusal existed exercised his right within a reasonable time after being tendered the opportunity to purchase the property. In the matter before us, the Optimist Club never tendered the property to Mr. Gorum for repurchase.
The validity of a right of first refusal was recognized in Keene, as well as in other prior jurisprudence. See Crawford v. Deshotels, 359 So.2d 118 (La.1978); Price v. Town of Ruston, 171 La. 985, 132 So. 653 (1931); Travis v. Heirs of Felker, 482 So.2d 5 (La.App. 1 Cir.1985). Additionally, Acts 1993, No. 841, § 1, effective January 1, 1995, codified the right by enacting La.Civ.Code art. 2625. While that statute was not in force and effect in 1974, it did not change the law but gave "legislative formulation to a kind of agreement long recognized by Louisiana jurisprudence." Comment (a) to La.Civ.Code art. 2625. Additionally, although La.Civ.Code art. 2628 now places a time limitation of ten years for a right of first refusal, that Article was also enacted by Acts 1993, No. 841, § 1, and became effective January 1, 1995. As suggested by Comment (a) to that Article, this limitation changed the law, and we find it to be a substantive change which should not be applied retroactively. We further note that Comment (b) to La.Civ.Code art. 2628 states that "[a] right of first refusal or an option to buy for a perpetual or indefinite term is null," citing jurisprudence in support of that statement, including Crawford, 359 So.2d 118. However, a reading of the cases cited makes it clear that the prior jurisprudence found options without a definite term to be null and void, not rights of first refusal. Thus, we find no merit in the defendants' argument that the reacquisition provisions of the contract are null and void as a matter of law.
In another assignment of error, the defendants argue that the plaintiffs' rights have prescribed. They base this argument on Mr. Gorum's testimony that he attended an Optimist Club meeting in 1981 and tendered $3,000.00 cash for the return of the property. However, the Optimist Club rejected the tender and informed him that the organization still had "plans for that land." Mr. Gorum testified that he did not pursue his options under the original cash deed because the public was still using the tennis courts and the Optimist Club still advertised the rodeo event and used the property for parking, although even then the Optimist Club was not very active. Considering this evidence, we do agree with the defendants that any rights the plaintiffs had under the second reacquisition clause have prescribed. That clause required the Optimist Club to offer the property to Mr. Gorum in the event no building was constructed on the property within three years of the initial transfer. We do not have to determine whether the beauty shop referred to by Mr. Stanley constituted a "building" for the purpose of this clause. The reservations or reacquisition clauses of the contract are personal actions, which are subject to the liberative prescription of ten years. See La.Civ. Code art. 3499. Assuming no building was constructed on the property, the plaintiffs' cause of action under this portion of the contract would have come into existence on February 20, 1977, and the plaintiffs would have had ten years from that time to bring suit. They did not do so, and any claim under that provision of the contract has prescribed.
The defendants also assert that there exists a genuine issue of material fact concerning what the parties meant by the term "club functions" in the third reacquisition clause. They argue that the phrase "ceases to be used ... for club functions" is ambiguous and requires evidence concerning the intent of the parties in agreeing to that reservation. We agree that, as a general rule, summary judgment "is rarely appropriate for a determination based on subjective facts such as intent, *695 motive, malice, knowledge or good faith." Penalber v. Blount, 550 So.2d 577, 583 (La.1989). However, we need not consider whether or not the clause is ambiguous because we find the plaintiffs are entitled to the relief granted under the first right of first refusal reservation.
The first provision provides for a right of first refusal if the Optimist Club decided to sell the property. Although they did not argue it on appeal, the defendants argued to the trial court that the first reacquisition clause prevented the Optimist Club only from selling the property to another and therefore is not applicable because the Optimist Club transferred the property by a dation en paiement. They pointed out that a sale was defined in 1974 by La.Civ.Code art. 2439 as "an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself."[4] A dation en paiement, or a giving in payment, on the other hand, was defined as "an act by which a debtor gives a thing to the creditor, who is willing to receive it, in payment of a sum which is due."[5] Former La.Civ.Code art. 2655.
While we acknowledge that "sale" and "dation en paiement" are defined in separate code articles, we also note that Comment (c) under current La.Civ.Code art. 2655 states that "[a]ll of the elements necessary to perfect a valid sale ... are essential to the perfection of a giving in payment." Additionally, Comment (g) under the same Article states that "[a] giving in payment transfers ownership and has the same effect as an ordinary sale."
Because the dation en paiement transfers ownership and has the same effect as an ordinary sale, drawing a meaningless distinction between a sale and a dation en paiement in the context of this contract would allow the Optimist Club to circumvent its obligation simply on the basis of semantics. The object of the February 20, 1974 contract was to give Mr. Gorum the right of first refusal to the property in the event the Optimist Club decided to divest itself of ownership. We find that an interpretation that allows the Optimist Club to divest itself of ownership through a dation en paiement without providing Mr. Gorum with a right of first refusal results in an absurd and unintended consequence.
Therefore, the Optimist Club transferred the property to Mr. Stanley in violation of its contract with Mr. Gorum. The reacquisition clause is not null and void, and the plaintiffs' rights under it had not prescribed at the time Mr. Gorman filed suit. Thus, we find that the trial court did not err in granting the motion for summary judgment.
The plaintiffs argue in brief that the trial court erred in not awarding them damages and attorney fees. However, they neither appealed pursuant to La.Code Civ.P. art. 2121 nor answered the appeal pursuant to La.Code Civ.P. art. 2133. Therefore, we do not find that those issues are properly before us.

DISPOSITION
For the foregoing reasons, we affirm the judgment of the trial court in all respects. We tax all costs of this appeal against the defendants, H.K. Stanley and Carolyn Chevalier Stanley.
AFFIRMED.
PICKETT, J., dissents with written reasons.
PICKETT, Judge, dissenting.
I respectfully dissent. The first reacquisition clause set forth in the cash sale *696 deed prevented the Optimist Club from selling the property to another without first offering it to Plaintiff and affording him the opportunity to repurchase the property. The club did not sell the property at issue. Title to the property was transferred by dation en paiement thereby releasing the club from a $5,000.00 debt secured by a mortgage on that property. A dation en paiement is clearly distinguishable from a sale. Plaintiff has no legal remedy under that clause.
Further, there exist genuine issues of material fact which prohibit summary judgment from being appropriate as to the third acquisition clause of the deed. That clause allows Plaintiff to reacquire the property if it "ceases to be used ... for club functions."
I would reverse the ruling of the trial court and remand this matter for a trial on the merits. I therefore respectfully dissent.
NOTES
[1] The suit was initially filed by Mr. Gorum alone. However, in response to a nonjoinder exception filed by two of the defendants, Addie Morgan Gorum later joined in the petition as a party plaintiff.
[2] Mrs. Gorum joined as a party plaintiff after the filing of the motion for summary judgment but before the hearing on the motion.
[3] H.K. Stanley testified concerning an old beauty shop, which he asserted was moved to the property soon after it was purchased, but it was later torn down and the lumber used to construct a concession stand at a baseball park across the street.
[4] Acts 1993, No. 841, § 1, effective January 1, 1995, reenacted La.Civ.Code art. 2439 to read in pertinent part: "Sale is a contract whereby a person transfers ownership of a thing to another for a price in money."
[5] Acts 1993, No. 841, § 1, effective January 1, 1995, also reenacted La.Civ.Code art. 2655 to read as follows: "Giving in payment is a contract whereby an obligor gives a thing to the obligee, who accepts it in payment of a debt."