FREDERICKA HOMBERG WICKER, Judge.
13This appeal concerns a dispute over contested provisions in a lease agreement — the right of first refusal to purchase the leased property and the exercise of lease renewal options. The original 1977 lease provided for renewal options. It is undisputed that the original lease was recorded but the exercises of renewal options were not. The plaintiff, Royal Oldsmobile Company, Inc. (Royal), originally leased the property from two brothers; Frank P. Dimitri and Joseph Dimitri. After their deaths, the ownership changed. Now, Royal seeks specific performance requiring the current owners to sell their respective one-half undivided interests to Royal in accordance with the alleged lease provisions. Alternatively, Royal asks that all sales that occurred in violation of its right be rescinded and that the defendants/parties who acquired ownership following the brothers’ deaths be ordered to sell their interests in the property to Royal. Royal sued the Dimitri defendants,[1] the Succession of Garrett defendants,[2] and *485 Heisler Properties, LLC (Heisler). Royal additionally seeks rental reimbursement or 14damages for amounts it paid based on its contention that those amounts are null and void given the violation of its right of first refusal.
The partial summary judgments on appeal arise from cross-motions for summary judgment filed by Royal and one of the current buyers, the Succession of Garrett defendants, which the trial judge granted in part in one judgment. She denied Royal’s motion for summary judgment as to the Succession of Garrett defendants and she granted the Succession of Garrett defendants’ cross-motion for summary judgment. As to the Succession of Garrett defendants, she concluded that the right was not triggered by an involuntary U.S. Marshal’s bankruptcy sale through which the Succession of Garrett acquired the property. Regarding Royal’s motion for summary judgment against Heisler, the trial judge granted the motion, finding that Heisler was aware that Royal leased the property at the time of the sale and, relying on La.C.C. art. 3389,[3] she found that the recordation of the exercise of lease renewal options was not necessary for the lease to continue to affect third parties such as Heisler. She rendered judgment finding that Royal was entitled to specific performance of its right to first refusal with respect to the leased property acquired by Heisler. Royal and Heisler appeal. The trial judge only decided two theories of the case; namely, that the right of first refusal was not barred by Royal’s failure to record the exercise of renewal options and the right was not triggered by an involuntary U.S. Marshal’s bankruptcy sale. For the foregoing reasons, we vacate in part the certification of appealability issued by the trial [ .judge; dismiss without prejudice in part; affirm in part; and remand for further proceedings.

Procedural History and Underlying Facts

Frank P. Dimitri and Joseph Dimitri were the original co-owners with one-half undivided interests in the leased property located in Jefferson Parish bounded by Severn Avenue, Veterans Boulevard, 27th Street and North Hullen Street. The brothers leased the property to Royal on June 29, 1977. It is undisputed that the original lease was recorded. Paragraph 19 of the lease contained the following right of first refusal:
RIGHT OF FIRST REFUSAL. In the event that the Lessor has a bona fide offer in writing and desires to sell all or any part of the leased premises, the Lessee shall have the right of first refusal, for a period of thirty (30) days following delivery of a copy of the offer to its offices, to purchase the property for such amounts and upon such terms as the Lessor has an opportunity to sell such property to a third person. Provided, however, the right of first refusal provided for in this paragraph shall not apply to sales or transfers from the *486 present owner to trusts for the benefit or members of the families of such owner, or to corporations, the majority of the voting stock of which is owned by the present owner or members of his family; however, such right of first refusal shall be binding on such transferees in the event the transferees desire to sell all or part of the leased premises, and Lessor agrees that a clause to that effect shall be set forth in any act of transfer of the property to any trust or corporations as set forth above.
The lease provided for successive options to renew as follows:
The original term was 60 months, commencing on October 1, 1977 and expiring September 30, 1982. It provided that the lessee shall have the option to renew the lease for two consecutive five-year periods and an additional seven-year period and another additional period of seven years, two months upon the same terms and conditions contained in the lease, with the exception of the monthly rental rate, which shall increase as further provided. It stated that if the lessee decided to exercise the option, the lessee shall notify the lessor in writing of the exercise of its option at least 120 days prior to the end of the primary term or, any | (¡extension thereof. If written notice is not given, the lessor shall notify the lessee in writing that it is time to exercise the lessee’s option. If said written notice from the lessee was not given within 10 days of the lessor’s notice, the option shall automatically expire the lease. It stated that it was understood and agreed that the renewal option contemplated four renewal options with the first being exercised at least 120 days pri- or to the end of the first five-year extension (September 30, 1987). The expiration date of the final option period was November 30, 2006.[4]
Frank Dimitri and Joseph Dimitri died in 1993 and 2003, respectively. Thereafter, subsequent transfers of the leased property resulted in the Succession of Garrett’s ownership of Frank’s undivided interest and Heisler’s ownership of Joseph’s undivided interest. The Succession of Garrett and Heisler each acquired an undivided one-half interest in the property on October 14, 2003 and December 11, 2003 respectively.[5]
After Frank died in 1993, his wife, Josephine Desalvo Dimitri, was recognized as the sole heir and placed in possession of all of Frank’s assets on June 26, 2000. Pursuant to bankruptcy proceedings in the United States Eastern District of Louisiana, in the bankruptcy case entitled “In re Josephine Dimitri,” consolidated with “Jo *487 sephine D. Dimitri v. Granville Semmes, et. als,” the bankruptcy court seized property belonging to the debtor, Josephine D. Dimitri, on June 24, 2003. The property included Frank’s undivided interest in the leased |7property. The seized property, along with other property, was sold on October 14, 2003 by the United States Marshal for the Eastern District of Louisiana to the highest bidder — Succession of William C. Garrett.
After Joseph died on June 19, 2003, his widow, Josephine Virga Dimitri, and the Succession of Joseph Dimitri entered into a cash sale of property on December 11, 2003. They sold, among other pieces of property, Joseph’s undivided half interest in the leased property to Josephine Desal-vo Dimitri. On the same day, December 11, 2003, Josephine Desalvo Dimitri sold, among other pieces of property, the subject property to Heisler.

The Motions for Summary Judgment The 2006 Motions

In 2006, Heisler, the Succession of Garrett defendants, and Royal filed motions for summary judgment. The former trial judge granted Heisler’s and the Succession of Garrett defendant’s motions for summary judgment and denied Royal’s motion for summary judgment. The trial judge found that the original lease had expired and that none of the lease renewal options were ever recorded to show that any renewal options had been exercised. The trial judge further found that Royal’s right of first refusal under the lease did not apply to the Succession of Garrett’s acquisition of the property pursuant to the involuntary U.S. Marshal’s sale in a bankruptcy case.[6]

The Current 2009 Motions

In 2009, after a newly-elected judge presided over the case, Royal and the Succession of Garrett defendants filed motions for summary judgment. Heisler did not file a motion.
| «Royal conceded that while the original lease was recorded, Royal’s exercises of renewal options were not recorded. However, it asserted that La.C.C. art. 3339 did not require recordation to affect third parties. Heisler opposed the motion and additionally asserted that Royal failed to pay rent.[7]
The Garrett motion for summary judgment likewise asserted that since Royal breached the lease by failing to pay the required rent, Royal could not enforce any rights under the lease. The Succession of Garrett defendants further argued that the 2003 U.S. Marshal’s sale did not trigger the right of first refusal because there was no bona fide offer in writing and the lessor did not desire to sell the property to the U.S. Marshal. Also, because the exercises of renewal options were not recorded, the right of first refusal expired when the terms of the recorded lease expired.[8]
After the trial judge rendered judgment, Heisler filed a motion for new trial asserting, among other things, that Royal failed to meet its burden of proving the alleged right was triggered through a bona fide offer in writing. Royal opposed the motion arguing that the only outstanding issue was the sale price of the property. *488 Although Royal asserted that Heisler admitted the price, Heisler disagreed. In particular, Heisler argued there still remained the issue of Royal’s alleged failure to pay proper rent. The trial judge denied the motion for new trial and designated the judgments as final.

Analysis

Royal argues that the trial judge erred in holding that the right of first refusal was not binding on the Succession of Garrett defendants on the basis that the | nSuccession of Garrett purchased the one-half interest in the property at a foreclosure sale. Alternatively, Royal asserts that the trial court erred because the Succession of Garrett defendants and Heisler ratified the lease through their actions, thus binding themselves to its terms, including the right of first refusal. Heisler appeals the judgment finding that Royal is entitled to specific performance from Heis-ler. Heisler argues that the trial judge erred in failing to recognize the public records doctrine. Also, Heisler states that it provided the court with evidence of Royal’s chronic and contumacious default and its refusal to pay the appropriate rent, pointing out that when there is a material breach, the defaulting party cannot avail himself of any provision of the violated lease. Heisler further argues that is undisputed that no request for specific performance or exercise of any right of first refusal was made in the 30 days after Heisler informed Royal that it had purchased a half-interest in the property by bulk sale dated December 11, 2003.

The Partial Summary Judyments

There are two partial judgments on appeal together in one rendered judgment. We consider whether these judgments are properly before the court. This court cannot determine the merits of an appeal unless our jurisdiction is properly invoked by a valid final judgment. Creighton, Richards & Higdon, L.L.C. v. Richards Clearview, L.L.C., 09-247 (La.App. 5 Cir. 10/29/09), 28 So.3d 391, citing La.C.C.P. art. 2083; Phoenix Associates v. E.H. Mitchell & Co., 07-0108 (La.App. 1 Cir. 9/14/07), 970 So.2d 605, 610, writ denied, 07-2365 (La.2/1/08), 976 So.2d 723.
La.C.C.P. art. 1915(B)(1) provides:
When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories, whether in an | ^original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

The Remaining Claims and Defenses

The following claims are outstanding: Royal’s claims against the Dimitri defendants; [9] Royal’s third party demand against an alleged sublessee;[10] and, the Succession of Garrett’s and Heisler’s re-conventional demands for alleged past due rental.
The following defenses have yet to be addressed by the trial court:
The Succession of Garrett defendants pleaded the following affirmative defenses: Royal did not claim any right in connection with the foreclosure; and, Royal was in default at the time Royal claims entitlement to purchase the property. Among other things, on June 10, 2004, Heisler *489 pleaded various defenses and exceptions, including an exception styled “no right of action” arguing that Royal breached the lease by being in default and therefore could not avail itself of the right. Heisler did not set the “exception” for hearing and the trial judge has yet to rule on that claimed defense. In 2006, Heisler reurged that defense among others in its motion for summary judgment. The former trial judge, however, ruled that the lack of re-cordation of the exercises of renewal options barred Royal’s claim. Thus, she never reached the default issue.
In addition, in 2007 Royal filed an exception of prescription as to the alleged claims by Heisler and the Succession of Garrett defendants for unpaid rent. Royal did not ask that the exception be set for hearing. Rather, Royal asked that the exception be referred to trial on the merits. The judge has yet to rule on that exception.
|nIn the current judgment in favor of Royal against Heisler, the trial judge decided a theory of the case; namely, that recordation of the renewal options was unnecessary pursuant to Article 3339 to affect third parties. That finding did not determine the merits of Royal’s petition for specific performance. The trial judge has yet to rule on Heisler’s defenses, including the claim that Royal defaulted on the lease and thereby could not enforce the right. In addition, although the trial judge recognized that Royal’s right of specific performance was not barred by its failure to record the exercise of renewal options, the trial judge never considered or made any ruling as to the purchase price that Royal would have to pay Heisler to enforce its right. In short, a mere finding that recordation was unnecessary only means that the absence of recordation does not otherwise bar Royal’s claim for specific performance from Heisler. The trial judge has yet to determine the merits of the claim against Heisler, including other defenses, in its entirety.
In contrast, in the judgment in favor of Royal against the Succession of Garrett defendants, the trial judge determined Royal’s main demand against the Succession of Garrett defendants; namely, that an involuntary U.S. Marshal’s sale did not trigger the right of first refusal. Having found that Royal was barred as a matter of law, she had no need to further determine other defenses raised by the Succession of Garrett defendants.
Still, both judgments relating to the Succession of Garrett and Heisler are partial judgments. The judgments did not dispose of the reconventional demands filed by Heisler and the Succession of Garrett defendants. The judgments also did not dispose of Royal’s third party demand.
Unless properly designated as a final judgment, we are without jurisdiction to consider the appeal of these partial judgments. Compare: Diagnostic Management Affiliates, Inc. v. Yonter, 99-99, p. 5 (La.App. 5 Cir. 7/27/99), 739 So.2d 988, 990 (A summary judgment on the main demand without deciding the reconventional demand was not appealable where the judgment was not designated as final.).
In order to be appealable, these interlocutory judgments must each be “designated as a final judgment by the court after an express determination that there is no just reason for delay.” La.C.C.P. art. 1915(B). Although the trial judge designated the judgments as final, she did not expressly determine that there was no just reason for delay as required by Article 1915(B).
The proper standard of review for an order designating a judgment as final for appeal purposes when accompanied by explicit reasons is whether the trial court abused its discretion. If no reasons are given but some justification is apparent *490 from the record, the appellate court should make a de novo determination of whether the certification was proper. R.J. Messinger, Inc. v. Rosenblum, 04-1664, pp. 13-14 (La.3/2/05), 894 So.2d 1113, 1122.
In this case, it is apparent from the hearing on the motion to designate the judgments as final that the trial judge evidently considered the argument that certification would avoid piecemeal litigation.
Messinger instructs that courts of appeal, when conducting a de novo review in matters where the trial court fails to give explicit reasons for the certification, can consider the following list of factors, although not exclusive. This list may be used by trial judges when considering whether a partial judgment should be certified as appealable:
1) The relationship between the adjudicated and unadjudicated claims;
2) The possibility that the need for review might or might not be mooted by future developments in the trial court;
3) The possibility that the reviewing court might be obliged to consider the same issue a second time; and
]1S4) Miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.
Messinger, supra, 04-1664 at 14, 894 So.2d at 1122 (citation omitted).
However, the overriding inquiry for the trial court is whether there is no just reason for delay. Id. at 14, 894 So.2d at 1123.
As to Royal’s appeal from the judgment in favor of the Succession of Garrett defendants, we find the trial judge properly designated that judgment as appeal-able. Although the issue of proper designation presents a close question on the procedural issue, based upon our consideration of Messinger, we find that the trial court’s certification was appropriate. We conclude that the judgment as to the Succession of Garrett defendants effectively terminates Royal’s claim for specific performance as to the Succession of Garrett defendants. At this stage, the relationship between the adjudication on the bar to Royal’s suit for specific performance and the unadjudicated reconven-tional demand claim for past due rent are not so intertwined that the partial judgment should not be certified as appeal-able. Likewise, Royal’s unadjudicated third party demand is riot so intertwined.
On the other hand, the trial judge’s finding that Article 3339 applies does not determine the merits of Royal’s claim against Heisler. Although the trial judge stated in her judgment that she granted specific performance, we interpret that judgment to mean that she found as a matter of law, Royal was not barred from pursuing its claims even if the exercise of renewal options were not recorded. That ruling, unlike the ruling as to the Succession of Garrett defendants, did not dispose of the merits of Royal’s claim. It has yet to be decided whether Heisler’s defenses otherwise bar Royal’s right of first refusal.
| uAlso, it is apparent that the learned trial judge was obviously attempting to accommodate the wishes of the parties in certifying the judgment as immediately ap-pealable in order to obtain review of the trial court’s interpretation of the meaning of La.C.C. art. 3339. But to permit an appeal of such a judgment would encourage multiple appeals and piecemeal litigation. Accordingly, we find, upon de novo review that the trial court erred in designating the judgment granting summary judgment in favor of Royal against Heisler as immediately appealable.
*491 We find that the unadjudieated default claims and the exception of no right of action are based upon the same operative facts, and are dependent upon each other for common resolution. There is the possibility that the need for review might be mooted by future developments in the trial court in the event the trial judge finds that Heisler’s defenses, including the default issue, have merit or that Royal is not entitled to specific performance even if there was no necessity of recordation. Thus, there is the possibility that the reviewing court might be obliged to consider the same issue — Royal’s right to specific performance as to Heisler — a second time. We make no determination on those defenses since the trial judge never ruled on these issues. Furthermore, the trial judge has yet to determine the price that Royal should pay Heisler in the event she determines Royal’s claim on its merits and finds that Royal is entitled to purchase the property. Heisler filed a supplemental brief in which it states that this court can decide the default issue upon its de novo summary judgment review. Even assuming there are no issues of material fact regarding the alleged default (a fact that Royal disputes), we decline to do so in the first instance.
In Bianchini v. Muggivan, 09-924 (La. App. 5 Cir. 4/18/10), 40 So.3d 157, this court concluded it was improper for the trial judge to certify the partial judgment as appealable. The court reasoned that the partial judgment did not [^terminate the suit, and that the same parties would continue to litigate the remaining issues.
Similarly, judicial resources would be wasted by the appellate review of the partial summary judgment in favor of Heisler at this time, considering the probability of a later appeal involving the adjudication of the remaining defenses. Compare: Creighton, supra, 09-247 at 5, 28 So.3d at 394, citing Setliff v. Slayter, 08-1337 (La.App. 3 Cir. 1/7/09), 1 So.3d 799, 801. Accordingly, we find that the judgment granting Royal’s motion for summary judgment against Heisler is not ripe for immediate appeal.
For the above discussed reasons, we dismiss Heisler Properties, LLC’s appeal from the judgment granting summary judgment in favor of Royal without prejudice. As we have determined on our de novo review that the trial court erred in designating the judgment as final, we must dismiss this appeal. See: Creighton, supra, 09-247 at 6, 28 So.3d at 394. Since the judgment granting summary judgment in favor of Royal against Heisler does not constitute a final judgment for purposes of appeal, it may be revised by the trial court at any time prior to the rendition of the judgment adjudicating all issues and claims. La.C.C.P. art. 1915(B)(2). Because this partial, non-final judgment, may be revised at any time before resolution of the entire case, we decline to convert the improper appeal to a writ application. Accord: Kantas v. Board of Sup’rs of Louisiana State University and Agricultural and Mechanical College ex rel. LSU Eye Center-New Orleans, 00-0170 (La.App. 4 Cir. 3/1/00), 756 So.2d 1154, 1155-56.
As to Royal’s appeal from the judgment granting summary judgment in favor of the Succession of Garrett defendants, we maintain the appeal from that judgment as properly designated.
1 ifiThe Involuntary U.S. Marshal’s Sale
The language in the lease pertinent to the issues raised here reveals the following: The lessor has to have a bona fide offer in writing and a desire to sell all or part of the leased property in order to trigger the right of first refusal. Once triggered, then the lessee shall have the right of first refusal for 30 days following delivery of a copy of the offer to its offices *492 to purchase the property. Then, the lessee has a right to purchase the property for such amounts and upon such terms as the lessor has an opportunity to sell such property to a third person.
We pretermit a determination of whether the lease provision was in full force and effect when the Succession of Garrett purchased the property because, even assuming it was, clearly, the Marshal’s sale was involuntary and, accordingly, there was no “bona fide offer in writing and a desire to sell all or part of the leased property.”[11] For that reason, we also pretermit a determination of whether the Succession of Garrett defendants ratified the lease and whether Royal was in default.
Royal relies on a peculiar 1931 case from the Louisiana Supreme Court, Price v. Town of Ruston, 171 La. 985, 132 So. 653, 654-55 (La.1931). In Price, Mrs. Price, the owner of the property entered into an agreement with the Ruston Lodge, No. 1134, of the Benevolent and Protective Order of Elks, by which the lodge was permitted to construct, for its lodge room and meeting place, a third story on the building. The contract provided that in the event the lodge “shall desire to sell the third story,” Mrs. Price “shall be given the option and preference of purchasing the same at the price at which it shall be offered.” The recorded contract was binding on respective parties, their heirs, successors, assigns, or legal | ^representatives. The building was constructed according to the agreement. The first story was used for commercial purposes, the second story for offices, and the third story for the sessions of the Lodge.
The lodge defaulted on its loan obligation and the mortgaged third story was sold at a sheriffs sale to the town of Ruston, the last and highest bidder. The district court found that the optionee was entitled to take the property at the price offered by the highest bidder at the sheriffs sale. 132 So. at 655.
Price affirmed and explained:
We agree with the district judge that it would do violence to the intention of the parties to the contract if the word ‘desire’ should be construed literally, in the clause giving to Mrs. Price and her heirs and assigns the right to buy the third story on her building, at the price at which it might be offered for sale, in the event the Elks’ Lodge should desire to sell it. Mrs. Price was willing that this fraternal and benevolent and protective organization, the Elks’ Lodge, should own the third story of the Price building, and occupy her premises free of rent, as long as the lodge should continue to own the third story; but she was not willing to be bound to allow any one else, or any other institution, to own the third story of the Price building and occupy her premises free of rent. The expression ‘in the event the party of the second part shall desire to sell,’ meant in the event the Elks’ Lodge should be about to sell, whether willingly or because of financial inability to hold the property. The purpose of the clause in the contract was to prevent the Elks’ Lodge from being divested of its title without giving Mrs. Price or her heirs or assigns the right to take the title at the price which any other buyer would give for it.
132 So. at 655-56.
*493 We find Price is distinguishable. The lease provision here has different language. In Price, the option was only triggered by a “desire to sell.” In contrast, the right in this case is triggered by two events: “Lessor has a bona fide offer in writing and desires to sell all or any part of the leased premises.” (Emphasis added). An involuntary U.S. Marshal’s sale does not meet the first requirement of “a bona fide offer in writing.”
We find that Price is limited to its peculiar fact situation.
1 isRoyal presents these additional arguments: It is undisputed that it had no actual notice of the foreclosure sale, and, even if the right of first refusal did not bind the sale by the U.S. Marshal, subsequent to purchasing the property the Succession of Garrett defendants ratified the lease through their actions, thus binding themselves to its terms, including the right of first refusal. We find these arguments unpersuasive. The contract terms clearly provide for a limited right of first refusal that must be triggered by two events. Those two events did not occur in connection with the involuntary U.S. Marshal’s sale nor did any alleged ratification trigger the right.
Therefore, we find the trial judge did not err in granting summary judgment in favor of the Succession of Garrett defendants.

Decree

Accordingly, we vacate the certification of appealability of the partial summary judgment in favor of Royal Oldsmobile against Heisler Properties LLC; dismiss Heisler Properties LLC’s appeal without prejudice and remand for further proceedings. We affirm the judgment in favor of the Succession of Garrett defendants against Royal Oldsmobile and remand for further proceedings.

CERTIFICATION OF APPEALABILITY ISSUED BY TRIAL COURT VACATED IN PART; DISMISSED WITHOUT PREJUDICE IN PART; AFFIRMED IN PART; REMANDED FOR FURTHER PROCEEDINGS.

. These are the Dimitri defendants: Succession of Frank Dimitri; ABC, Succession Representative of the Succession of Frank P. Dimitri; Josephine Desalvo Dimitri; Succession of Joseph Dimitri; Camella M. Dimitri, Executrix of the Succession of Joseph Dimitri; and, Josephine Virga Dimitri (the Dimitri defendants).

. These are the Succession of Garrett defendants: Succession of William C. Garrett; Deborah Garrett Levis and Billie Garrett Semmes, co-executrices of the Succession of William C. Garrett (the Succession of Garrett defendants).

. The article provides:
A matter of capacity or authority, the occurrence of a suspensive or resolutory condition, the exercise of the option or right of first refusal, a tacit acceptance, a termination of rights that depends upon the occurrence of a condition, and a similar matter pertaining to rights and obligations evidenced by a recorded instrument are effective as to a third person although not evidenced of record.
2005 La. Acts, No. 169, § 10 provides that the act was effective January 1, 2006. In this case, the triggering events occurred in 2003, prior to the effective date of the article. The Succession of Garrett defendants argued that Article 3339 was substantive law which can only be applied prospectively. Royal disagreed.

. A second addendum to the lease dated June 29, 1977 stated that the lessee was granted the option to renew and extend the lease for two, five-year option periods, one seven-year option period, and one seven-year, two months option period.

. In support of its current motion for summary judgment, Royal attached an exhibit that purportedly indicates that on March 17, 2004 Succession of William C. Garrett sold the undivided interest in the leased property to Garrett Orleans, LLC. However, Garrett Orleans, LLC is not a named defendant. The only Garrett defendants are Succession of William C. Garrett, Deborah Garrett Levis and Billie Garrett Semmes, co-executrices of the Succession of William C. Garrett, the Succession of Garrett defendants. We note that the document purportedly indicates that Succession of William C. Garrett, co-executrices Debra Garrett Levis and Billie Garrett Sem-mes signed in their capacities as sellers and purchasers. The Succession of Garrett defendants filed a statement of material facts that were not disputed. The purported 2004 sale was not listed as an uncontested fact. However, in its opposition to Royal's current motion, the Succession of Garrett defendants stated that there was a transfer by the Succession of Garrett to its limited liability company, Garrett Orleans LLC on March 14, 2004.

. The trial judge denied the motion to designate the partial judgment as appealable. See: La.C.C.P. art. 1915(B).

. During oral argument before this court, Heisler conceded it had no claim for rent due to the prior owners. However, Heisler still maintained its position that Royal’s alleged default barred Royal from enforcing the lease provisions.

.The trial judge denied the Succession of Garrett defendants’ non-forfeiture arguments, apparently as moot.

. See, infra, note 1. By joint motion, trial regarding the Dimitri defendants was severed on June 27, 2007.

. That demand was also severed.

. "Most of the few authorities considering the question take the view that a foreclosure or similar involuntary sale is not within the contemplation of a "first refusal” option and that the holder of the option therefore has no greater rights at such sale than any other buyer.” See: Annot., 17 A.L.R.3d 962 (1968).