*207
 
 CLARENCE E. McMANUS, Judge.
 

 |20n January 7, 2008, Hertz filed a Petition to Enforce Purchase Agreement, seeking to purchase property located on Airline Drive from defendants, R <& R Properties, LLC
 
 [1]
 
 In the petition, Hertz alleged that on September 4, 1996, it had entered into a lease with an option to purchase agreement with R
 
 &
 
 R. Hertz attempted to exercise its purchase option, however R & R accepted the offer in writing but then failed to close. Hertz sought specific performance, plus damages for failure to perform. R & R reconvened, seeking a declaratory judgment that the option expired on December 6, 2007, when the sale failed to close, and therefore Hertz was not entitled to specific performance. After trial on the merits, the court granted judgment in favor of Hertz, finding that it was entitled to specific performance to compel the sale of the property. The court ordered that R & R either cancel or have cancelled the defects to its title. The court also found that Hertz was entitled to credit for rents paid, and to attorney’s fees and costs. In addition, the trial court dismissed R & R’s reconventional demand against Hertz.
 

 |SR & R appeals from this judgment. For the reasons that follow, we affirm the decision of the trial court.
 

 FACTS & PROCEDURAL HISTORY
 

 In 1995, R & R listed the property at issue for sale for the sum of $900,000.00. Hertz responded to the offer, however, R & R indicated that it had not intended to sell the whole lot, and its listing agent had made a mistake.
 

 After negotiations, Hertz and R & R entered into a 20-year lease, with an option to purchase. The lease provided to Hertz the option to purchase the property “after the tenth anniversary of the Commencement Date, but in no event after the eleventh Anniversary of the Commencement Date.” The lease started on February 1, 1997, and therefore the tenth anniversary date of the lease was February 1, 2007. The lease further provided that the closing was to take place within 120 days after Hertz tendered the option notice, and that in the event that curative work was required, closing would be extended to a date not more than 15 days after the curative work was completed, and not more than 90 days in total without agreement of the parties. The lease further provided that “The closing shall take place either in escrow through the mails or, if not practicable, then at the principal office of the Lessor[.]” The lease also set forth duties of the lessor, including a requirement that the lessor execute and deliver “such additional documents and insurance as may be reasonably required by Lessee’s title insurance company to delete all Title Encumbrances other than the Permitted Encumbrances.” Finally, the lease stated that “In the event Lessor fails to comply with this purchase agreement for any other reason that inability to deliver merchantable title, within the time specified, Lessee shall have the right to demand specific performance.”
 

 |4By letter dated July 24, 2007, Hertz informed R & R of its intent to purchase the property. Initially R & R rejected the option, contending that the tenth anniversary of the commencement date was February 1, 2006 and therefore the option had to be exercised in the 9th year of the lease. Almost two months later, on September 20, 2007, R & R notified Hertz that it accepted its offer to purchase.
 

 
 *208
 
 Hertz throughout the course of the purchase proceedings was represented by in-house counsel, Ms. Marcia Davis-Allison. Initially, R & R was represented by Ms. Joelle Evans. At some point thereafter, attorney Richard Montgomery was retained to either assist or replace Ms. Evans.
 

 Hertz contacted First American Title Insurance Company to obtain title insurance, and also to act as escrow agent.
 
 [2]
 
 First American Title agreed to issue the policy, contingent on certain conditions that were to be fulfilled. The conditions, listed in Schedule B, Section 1 of the “Agreement to Issue Policy” included section 6, cancellation of adverse inscriptions, including “(c) MOB 4106, folio 582-Collat-eral Mortgage in favor of Omni Bank dated January 22, 2003, in the principal sum of $161,013.00”, “(d) COB 3092, folio 790-Assignments of Leases and Rents in favor of Omni Bank dated January 22, 2003”, and “(e) COB 2989, folio 559-Assignment of Leases and Rents in favor of Hibernia National Bank, dated August 4,1998.”
 

 During the month of November, 2007, Ms. Davis-Allison exchanged emails with Ms. Evans and Mr. Montgomery requesting closing documents and title clearance. Through a conference call on November 15th, between Ms. Davis-Allison, Mr. Montgomery, and representatives of the title companies, Ms. Davis-Allison also told R & R that the documents needed to be produced prior to the date |sof closing, as this was a closing through the mail. Apparently, while the mortgages on the property had been paid off, R & R had not caused them to be marked cancelled with the Clerk of Court, and therefore they still remained as encumbrances on the property.
 

 Despite these numerous contacts between Ms. Davis-Allison and R & R’s representatives, the encumbrances had not been cancelled by December 4, 2007, the date closing was scheduled. Because of R & R’s failure to cancel the encumbrances, Ms. Davis-Allison did not have the purchase price of $750,000.00 wired to the closing agent. She then attempted to reset the closing for December 6th, but was informed by Mr. Holmes that R & R considered Hertz in breach of the contract and therefore it could no longer exercise its option to purchase. R & R also stated that it was no longer interested in selling the property.
 

 At trial, both Mr. Holmes and Ed Ren-don of R & R testified that Mr. Rendon delivered the documents necessary to cause the mortgage to be cancelled (the originals of the paid notes and assignments) to Mr. Holmes’ office on the afternoon of December 4. At trial, they contended that this was sufficient to meet the curative requirements because these encumbrances could be cancelled after the sale. They admit that they did not provide the originals to the title company or to Hertz, contending that under Louisiana law, they had the right to deliver these documents at the closing.
 

 Stephen McCollister was qualified as an expert in real estate closings, title insurance and related matters. He testified at trial that “in escrow through the mail” requires that each party produce the necessary documents to the escrow agent, and that this was usually done in advance of the closing date.
 

 Radar Jackson was also qualified as an expert in real estate transactions and title insurance. He testified that he reviewed
 
 *209
 
 the lease and found nothing to require | r,the seller to cancel the mortgages prior to the sale, and that it was acceptable under Louisiana law to cancel the encumbrances post-sale.
 

 After R & R informed Hertz that it was not obligated to sell the property, Hertz instituted this suit for specific performance.
 

 LAW & ANALYSIS
 

 Our standard of review in this matter was set forth in
 
 Evans v. Lungrin,
 
 97-0541 (La.2/6/98), 708 So.2d 731 as follows:
 

 It is well-settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence.
 

 In brief, R & R argues that the trial court erred in finding that Hertz was entitled to specific performance because Hertz did not deliver its purchase price before the expiration of the option. Furthermore, it contends that the trial court erred in ruling that it did not timely perform its obligations as R & R had either performed or was ready to perform at the time of closing. In addition, R
 
 &
 
 R contends that the trial court erred in ordering it to cancel its obligations, as its title was good and merchantable at the time of the scheduled closing. Finally, R & R argues that the trial court erred in granting Hertz a credit for rent paid from the original scheduled date of closing to present, and also that the trial court erred in awarding attorney’s fees and costs to Hertz.
 

 In its first allegation of error, R & R argues that the trial court erred in finding that Hertz was entitled to specific performance. It contends that Hertz was in breach of its obligations by failing to deliver the purchase price to the escrow agent on the date the sale was to take place. It further contends that R & R itself was not in breach, because it stood ready to deliver the originals needed to cancel the 17encumbrances in the mortgage office, despite the fact that it did not provide those documents to Hertz or its escrow agent, nor did it cause the encumbrances to be cancelled, although this was to be a closing by mail and R & R had been requested to cancel these encumbrances prior to closing.
 

 R & R relies on sales articles in the obligations portion of the Louisiana Civil Code, and specifically that provision that states that the “seller may refuse to deliver the thing sold until the buyer tenders payment of the price.” Also the codal article states that “the obligor of one may not be put in default unless the obligor of the other has performed or is ready to perform his own obligation.” LSA-C.C. art. 1993.
 

 However, Hertz’s right of specific performance does not arise from statutory law, but from the contract between the parties. The contract states that Hertz is entitled to specific performance if R & R fails to perform its obligations. LSA-C.C. art. 1993 does not modify this provision, but just sets forth the rights of the parties in the absence of any agreement. Compare
 
 Primeaux v. Bennett Homes, Inc.,
 
 339 So.2d 1251 (La.App. 1 Cir.1976). The contract does not require Hertz to tender payment where R
 
 &
 
 R has not performed. In this case, the trial court found that under the facts of this case, R & R was in breach of its obligation and therefore Hertz was entitled to specif
 
 *210
 
 ic performance. We find no manifest error in this decision of the trial court
 
 [3]
 
 .
 

 In its second allegation of error, R & R alleges that the trial court erred in giving Hertz credit for the rental payments that it made during the course of litigation. It cites to language in the Option that states that “The purchase price for the Premises is $750,000.00. Prior lease payments shall not be credited to the | ^purchase price.” However, under the circumstance of this case, the amount of damages suffered by Hertz as a result of R & R’s failure to close is equal to the lease payments it was obligated to make because R & R did not sell the property as provided in the contract. The option in the lease contract provided that Hertz would be awarded damages in the event of R & R’s default. Had R & R cleared title to facilitate the closing, title to the property would have passed to Hertz, and Hertz would not have made rental payments under the lease from the scheduled date of closing, December 4, 2007.
 

 In conjunction with this allegation of error, R & R argues that it has not had the use of the $750,000 (the purchase price) or the building during the pendency of this litigation and therefore it should be allowed to keep the rents. Had title passed, it would not have obtained use of the building. Furthermore, it was the actions of R & R itself that caused deprivation of the use of the $750,000, and therefore it cannot complain at this juncture. We find no error in the ruling of the trial court ordering R & R to reimburse rental payments.
 

 Finally R & R argues that Hertz is not entitled to attorney’s fees and costs, despite the provision in the lease contract that so provides. First it alleges that Hertz is not entitled to attorney’s fees and costs because it did not tender the purchase price, pursuant to LSA-C.C. art. 1993. We have considered this argument in R
 
 &
 
 R’s first allegation of error,
 
 supra,
 
 and found it to be without merit.
 

 R & R also argues that this provision in the contract should not be enforceable because the contract did not contain a reciprocal provision for attorney’s fees and costs to be awarded to R & R in the event that Hertz breached the contract. Pursuant to LSA-C.C. art. 1983, “Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds | ¡¡provided by law. Contracts must be performed in good faith.” LSA-C.C. art. 2046 states that ‘When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” Furthermore, the rules of strict construction do not authorize the creation of ambiguities where none exist, and do not permit courts to modify contractual obligations when the language used by the parties is clear.
 
 Freeport-McMoran Energy, LLC v. Cedyco Corp.,
 
 10-0367 (La.App. 4 Cir. 1/5/11), 54 So.3d 813,
 
 writ denied,
 
 11-0442 (La.4/29/11), 62 So.3d 111.
 

 The language of the contract between these parties clearly states that Hertz is entitled to attorney’s fees in the event R
 
 &
 
 R should breach the terms of the contract, which this Court finds occurred. We find no error in the trial court’s ruling that Hertz was entitled to attorney’s fees and costs.
 

 
 *211
 
 CONCLUSION
 

 For the above discussed reasons, the judgment of the trial court is affirmed. All costs are assessed against appellant.
 

 AFFIRMED
 

 [1]
 

 . R & R is a partnership between Robert Rizzo and Ed Rendon and was formed specifically to buy the Airline Drive property.
 

 [2]
 

 . Jed Levine was First American Title's agent working on this matter. In addition, Orleans Title was the local agent associated with First American Title, and David Martinez, an attorney and agent, was assigned the matter and therefore was the local closing agent.
 

 [3]
 

 . R & R requests that this Court conduct a de novo review of the record, contending that the trial court erred in failing to apply LSA-C.C. art. 1993. Because we have found the codal article inapplicable and thus the trial court did not err, we do not review this record de novo.