FREDERICKA HOMBERG WICKER, Judge.
|sThe question before the Court in this action for specific performance of contract and other relief is whether plaintiff has the right to purchase a half interest in the land it leased pursuant to a condition in that lease. The trial court granted plaintiff specific performance, finding plaintiff “is entitled to exercise its right of first refusal” to buy the half interest in its leased-land for the amount of $63,600. The trial court further ordered defendants to transfer all of their right, title, and interest in this land to plaintiff upon plaintiffs tender of this amount. Defendants appeal this judgment. Appellants argue the trial court erred because: it did not clearly reject each of defendants’ arguments; plaintiff lost its right of first refusal because it defaulted on its lease obligation; plaintiff never properly exercised its right of first refusal; and the trial court erroneously determined the purchase price to be $63,600. For the following reasons, we find appellants’ arguments to be without merit and therefore affirm the trial court’s judgment.
1 ¿FACTS AND PROCEDURAL HISTORY
Plaintiff, Royal Oldsmobile Company, Inc., leased certain land from its owners.[1] This lease, in addition to giving Royal the right to use the leased-land, gave Royal a right of first refusal allowing Royal to buy the leased-land should its owners, the lessors, ever receive a qualifying offer in writing to buy the land. The lease provided that this right of first refusal would not be triggered by certain intra-family ownership transfers and that Royal would have thirty days to purchase the leased-land after the owner delivered a copy of the offer to Royal’s offices. The lease’s provision’s full text stated,
RIGHT OF FIRST REFUSAL. In the event that the Lessor has a bona fide offer in writing and desires to sell all or any part of the leased premises, the Lesseef, Royal,] shall have the right of first refusal, for a period of thirty (30) days following delivery of a copy of the offer to its offices, to purchase the property for such amounts and upon such terms as the Lessor has an opportunity to sell such property to a third person. Provided, however, the right of first refusal provided for in this paragraph shall not apply to sales or transfers from the present owner to trusts for the benefit or members of the families of such owner, or to corporations, the majority of the voting stock of which is owned by the present owner or members of his family; however, such right of first refusal shall be binding on such transferees in the event the transferees desire to sell all or part of the leased premises, and Lessor agrees that a clause to that effect shall be set forth in any act of transfer of the property to any trust or corporations as set forth above.
The lease was recorded in the public registry.[2]
The lease between Royal and the land’s owners, and subsequent owners, endured for its original term and through several *88 renewed terms.[3] The final renewed term of the lease ended on September 30, 2006. The lease commenced to Rrun on June 29, 1977. In June, 1977, when the lease commenced, the leased-land was co-owned by Frank Dimitri and Joseph Dimitri, 50% to each. Joseph Dimitri’s interest, and whether its transfer to various successors triggered Royal’s right of first refusal, is the subject of this appeal.[4]
In a previous appeal, this Court chronicled how Joseph Dimitri’s interest transferred to Heisler:
After Joseph [Dimitri] died on June 19, 2003, his widow, Josephine Virga Dimi-tri, and the Succession of Joseph Dimitri entered into a cash sale of property on December 11, 2003. They sold, among other pieces of property, Joseph’s undivided half interest in the leased property to Josephine Desalvo Dimitri. On the Same day, December 11, 2003, Josephine Desalvo Dimitri sold, among other pieces of property, the subject property to Heisler.
Royal Oldsmobile, 58 So.3d at 487.
Josephine Virga Dimitri and the Succession of Joseph Dimitri sold the 50% interest in a collection of properties, which included the 50% interest in the leased-land, to Josephine DeSalvo Dimitri pursuant to an “Agreement to Purchase and Sell,” and its Extension.[5] Josephine DeSalvo Dimitri purchased the leased-land, along with other properties, for the price of $838,500.[6] That same day, Josephine DeSalvo Dimitri resold the same leased-land, along with the other properties she Ijiad just bought, to Heisler for the price of $800,000.[7] In neither of these sales were individual prices assigned to the particular properties which were transferred by the sales.[8]
*89 Royal did not know of Josephine DeSal-vo Dimitri’s purchase or subsequent sale of the leased-land at or before the two transactions. Further, Royal was not provided the opportunity to buy the 50% interest in the leased-land prior to the December 11, 2003 sales. The record contains no evidence that Josephine DeSalvo Dimitri ever notified Royal of her offer, purchase, or her subsequent sale of the collection of properties. Heisler first notified Royal of its purchase of the interest in the leased-land in writing in a letter dated March 1, 2004. While Heisler’s letter provided Royal with the Conveyance Book number of the in globo sale of the leased-land and other properties, neither the letter, nor the Conveyance Book record, provided the purchase price for the leased-land by itself. Heisler’s letter told Royal to begin sending rent payments under the lease to Heisler as the new owner. Royal responded to this letter with a letter of its own to Heis-ler, dated March 19, 2004, expressing its desire to exercise its right of first refusal and offering to pay the amount it estimated Josephine DeSalvo Dimitri had paid for the interest in the leased-land, $34,920.42. Acknowledging that this was an estimated purchase price, Royal offered to correct the price paid if it was the wrong amount. Heisler did not recognize Royal’s right of first refusal; instead, Heisler claimed 17Royal owed it back rent payments from a time period before it bought the leased-land.
On May 4, 2004, Royal filed suit against Heisler, and other defendants, seeking to enforce its right of first refusal to buy the leased-land.[9] The trial court entered a judgment in that suit which Royal appealed. In our first ruling on this case, this Court decided that, because the trial court had failed to rule on a variety of issues relating to Heisler, the trial court had not entered an appealable judgment relative to Heisler. Royal Oldsmobile, 58 So.3d at 491. Specifically, this Court found that the trial court had not yet determined whether Royal was in default, the consequences such default would have, and the proper price Royal must pay for the leased-land, if Royal were entitled to buy that land. We therefore concluded that we lacked jurisdiction and dismissed the appeal as it related to Heisler. Id.
In further proceedings, Henry Klein motioned to intervene in this suit. The record shows that on July 11, 2010, Heisler sold to Mr. Klein half of its 50% interest in the leased-land.[10] The trial court granted Mr. Klein’s motion to intervene on July 18, 2011.
On November 30, 2011, the trial court held a trial to determine the merits of the claims between Royal and Heisler and Mr. *90 Klein. At this trial neither party called additional witnesses nor introduced additional evidence. The parties each argued their positions relying upon the witnesses and evidence already presented. ^Heisler and Mr. Klein argued their defenses. They claimed that Royal defaulted after Heisler’s purchase of the leased-land by failing to pay the proper amount of rent. They conceded however that Royal had not been in default on its rent payments before the sale of the leased-land to Heisler.[11]
The trial court ruled upon these remaining claims in its December 6, 2011 judgment in which it ruled that Royal was entitled to specific performance to exercise its right of refusal in the amount of $63,600 and further ordered that when Royal tendered the $63,600 amount, that “Heisler and [Mr.] Klein must transfer all of their right, title and interest in the leased property at issue to Royal.”

ANALYSIS

Appellants, Heisler and Mr. Klein, argue the trial court erred in its December 6, 2011 judgment because: it did not clearly reject each of defendants’ arguments; plaintiff defaulted on its lease obligation; plaintiff never properly exercised its right of first refusal; and the trial court erroneously determined the amount of $63,600. We find each of these arguments to be without merit and address them individually below.

The Judgment And Reasons For Judgment

Appellants now argue that the trial court’s December 6, 2011 judgment improperly failed to address its defenses and give a reasoned analysis. We disagree. Here, both sides proposed findings of fact and then made their respective arguments at trial. After this trial, the trial court entered its judgment on the merits and rendered Findings of Fact and Conclusions of Law in which the court adopted Royal’s proposed findings of fact.
10After the trial court rendered its judgment and Findings of Fact and Conclusions of Law, neither party timely sought additional reasons for judgment pursuant to La. C.C.P. Article 1917. Therefore, appellants waived their right to complain of the trial court’s alleged failure to give a “reasoned analysis” in which it addressed each of appellant’s defenses in ruling on the merits of the case. Bosley v. Hebert, 13313 (La.App. 1 Cir. 5/5/80), 385 So.2d 430. Furthermore, the district court’s judgment and reasons for judgment are two separate and distinct legal documents. Appeals are taken from the judgment, not the written reasons for judgment which form no part of the judgment. Wooley v. Lucksinger, 09-0571 (La.4/1/11), 61 So.3d 507, 572, reh’g denied (4/29/2011). While appellants complain that the trial court failed to engage in a “reasoned analysis” of each of their defenses, “[a] final judgment need not dispose of all the issues between the parties; all that is required is that it determine issues involved on the merits of the action.” Wellmeyer v. W. Reserve Life Assur. Co. of Ohio, 94-937 (La.App. 5 Cir. 8/30/95), 663 So.2d 745, 746 (citing Landry v. John E. Graham & Sons, 506 So.2d 843, 844 (La.App. 1st Cir.4/14/87)). Conduct that prevents an opposing party from having an opportunity to appear or to assert a defense constitutes a deprivation of the party’s legal rights, and if demonstrated, provides grounds to annul a judgment. Advanta Bank Corp. v. First Mount Zion Baptist Church, 03-732 (La.App. 5 Cir. 12/30/03), 865 So.2d 165, 168. The trial court engaged in no such conduct here. The record reflects that appellants were afforded an opportunity *91 to argue each of their defenses at trial. Appellants also had an opportunity to present to the court their proposed findings of fact pretrial.
When a trial court’s judgment does not address an issue involved in the merits of an action, courts will remand the matter for supplemental findings. Fishbein v. State ex rel. LSU Health Sciences Ctr., 06-0549 (La.App. 1 Cir. 3/9/07), 960 So.2d 67, 75, writ denied, 07-0730 (La.6/22/07), 959 So.2d 495; Dufrene v. Torch, Inc., 98-276 (La.App. 5 Cir. 10/28/98), 720 So.2d 438, 44. Here however, the trial court disposed of the merits of the claim after receiving pleadings and hearing argument on each of appellants’ defenses.
Further, even when a trial court’s reasons do not adequately explain its decision making process, a court of appeal may affirm that trial court’s judgment. See Milton v. Crawford, 98-478 (La.App. 3 Cir. 10/7/98), 719 So.2d 743.
Appellants also complain that the trial court adopted Royal’s Proposed Findings of Fact. In Dufrene v. Willingham, 97-1239 (La.App. 5 Cir. 10/28/98), 721 So.2d 1026, 1029, writ denied, 99-0032 (La.3/12/99), 739 So.2d 212, this Court recognized that even when “a trial judge adopts most or almost all of a party’s suggested reasons for judgment, the reasons and the judgment itself will stand as long as the record supports them.” (citing Lancaster v. Petroleum Corp. of Delaware, 491 So.2d 768, 773 (La.App. 3 Cir.1986).)
Here, the parties were permitted to argue their respective cases, and their defenses. After examining the judgment as well as the trial court’s Findings of Fact and Conclusions of Law, we find that, while the trial court did not specifically address each of appellants’ defenses, it did decide of all issues at trial. Further, we find that the record supports each of the trial court’s findings of fact. Therefore, we find this assignment of error to be without merit.

Default

At trial, defendants admitted Royal was not in default when Heisler bought the interest in the leased-land. Defendants contend however that Royal defaulted after they purchased the leased-land and that therefore, Royal lost its right to exercise its right of first refusal. We disagree. We find that any default by Royal | n after Heisler’s purchase is irrelevant to our consideration because Royal’s right of first refusal was triggered by Heisler’s offer to purchase the land Royal leased.
A suspensive condition creates enforceable obligations when an event, which is uncertain to happen, occurs. La. C.C. art. 1767. A provision in a lease, such as a right of first refusal, allowing the leasee to buy the leased-land upon the occurrence of an uncertain event, is a suspensive condition.[12] Murry v. Murphy, 07-720 (La.App. 3 Cir. 11/21/07), 970 So.2d 700, 702. The right to enforce the obligation does not arise until the fulfillment of the suspensive condition, and the obligation may not be enforced until the condition is met.[13] Hampton v. Hampton, Inc., 97-1779 (La.App. 1 Cir. 6/29/98), 713 So.2d 1185, 1190.
Here, the right of first refusal is a sus-pensive condition in the lease because it *92 provides the lessee (Royal) a right only when an event that is uncertain to happen occurs. That uncertain event is a person offering to buy the leased-land, in whole or in part, when: that person is not a family member, trust, or corporation excluded by the lease; the offer is bona fide and in writing; and when the lessor desires to sell all or any part of the leased-land. Upon the occurrence of this event, Royal immediately gains the right to buy the land it leased. Because Royal’s rights under the lease were created automatically when Heisler offered to buy the leased-land, any subsequent default on the lease by Royal is irrelevant and therefore not considered by this Court.[14]

112Exercise of Right

Heisler further argues that the trial court erred in its judgment because Royal never validly exercised its right of first refusal. Heisler points out that the right of first refusal provision in the lease allows Royal only “(30) days following delivery of a copy of the offer to its offices, to purchase the property for such amounts and upon such terms as the Lessor has an opportunity to sell such property to a third person.” Heisler argues that Royal’s right of first refusal expired under this term because Royal did not purchase the property within the required thirty days after the time it made the offer on the property and gave notice to Royal of the sale. Heisler also contends that Royal did not properly exercise its right of first refusal because it did not comply with the law of tender and deposit. Again, we disagree.
Here, the lease’s right of first refusal provision states that the thirty-day period to buy the property begins to run from the day of “delivery of a copy of the offer to [the lessee’s] offices.” Our review of the record reveals no evidence that a copy of Heisler’s offer was ever delivered to Royal’s offices. Therefore, the lease’s thirty-day period has never commenced and never expired.[15]
Appellants assert the lease’s term, requiring the delivery of the offer, was not triggered because they never made an offer on the leased-land. Appellants contend they came to own the leased-land through an act of sale which transferred a collection of properties in globo, not through an offer particularly for the leased-land.
Appellants’ argument fails on two grounds. First, we find that, before its acceptance, the document which became the act of sale between Josephine DeSalvo Dimitri and Heisler, signed by Heisler, was a qualifying offer that ^triggered Royal’s right of first refusal.[16] Second, Heisler cannot circumvent the right of first refusal simply by purchasing other properties in addition to the leased-land in a sale transaction. To allow such a loophole would render rights of first refusal functionally meaningless. See Gorum v. Optimist Club of Glenmora, 99-1963 (La.App. 3 Cir. 8/30/00), 771 So.2d 690, 695 (finding that a dation en paiement triggered a *93 right of first refusal because it required the same elements as a sale).
Because the words of the lease contract are clear, we may search for no additional meaning. La. C.C. art.2046. Additionally, because we find that no copy of Heisler’s offer to buy the leased-land was delivered to Royal before the December 11, 2003 sale to Heisler, Heisler’s arguments regarding tender and deposit law are irrelevant. See Hertz Corp. v. R & R Properties, L.L.C., 11-50 (La.App. 5 Cir. 12/28/11), 83 So.3d 205, 209, reh’g denied, (1/24/12), writ denied, 12-0438 (La.4/13/12), 85 So.3d 1249. For these reasons, we find this argument by Heisler to be without merit.

Amount

Finally, appellants allege the trial court erroneously determined an amount of $63,600 for Royal’s exercise of its right of first refusal. Appellants argue that the trial court’s determination of this amount is a barred creative exercise and that the trial court should have not allowed specific performance in this case.
Initially, we recognize that the Civil Code permits specific performance of a right of first refusal. La. C.C. art. 2625 states, “A party may agree that he will not sell a certain thing without first offering it to a certain person. The right given to the latter in such a case is a right of first refusal that may be enforced by specific performance.” For a breach of contract granting a right of first refusal, specific | ^performance is the appropriate remedy. Price v. Town of Ruston, 171 La. 985, 132 So. 653 (1931); Culp v. Eagle’s Nest Church Of Monroe, 39-027 (La.App. 2 Cir. 11/19/04), 887 So.2d 743, 748. Specific performance is the preferred remedy in Louisiana, except where “it is impossible, greatly disproportionate in cost to the actual damage caused, no longer in the creditor’s interest, or of substantial negative effect upon the interests of third parties.” Weingarten v. Northgate, 404 So.2d 896, 901 (La.1981). We do not find any of the exceptions apply and therefore find that the trial court did not err in ordering specific performance.[17]
Finally, on the issue of whether the trial court erred in calculating $63,600 as the amount for which Royal is entitled to exercise its right of first refusal, we find that this is a finding of fact subject to review by this court as set out in Minton v. Crawford, 98-478 (La.App. 3 Cir. 10/7/98), 719 So.2d 743, 746.
When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973)....
The two-part test for an appellate court’s review of facts under a manifest error standard is:
1) The appellate court must find from the record there is a reasonable factual basis for the finding of the trial court, and,
2) The appellate court must further determine that the record establishes that the finding is not clearly wrong (manifestly erroneous).
Mart v. Hill, 505 So.2d 1120, 1127 (La.1987), citing Arceneaux v. Domingue, *94 365 So.2d 1330 (La.1979). In essence, this test means a reviewing court must do more than simply review a record for some 1^evidence which supports the trial court’s finding; it must determine that the record, as a whole, establishes the trial court was justified in its conclusions. [Housley v. Cerise, et al., 579 So.2d 973, 976 (La.1991).]
On review of the record before us, we find that the trial court did not manifestly err in this calculation. Evidence introduced by Royal reflects that, on May 14, 2003, pursuant to a U.S. Marshal’s Sale, a 50% interest in the same collection of properties that Josephine DeSalvo Dim-itri sold to Heisler was appraised at $864,500. Further, Royal introduced evidence which showed that the leased-land accounted for approximately 7.95% of the value of this appraised collection of properties.
Royal’s right of first refusal entitled it to buy its leased-land “for such amount and upon such terms as the Lessor has an opportunity to sell such property to a third person.” Here, the record shows that the “Lessor” — now, Josephine DeSalvo Dimi-tri — had such an “opportunity to sell” to Heisler for $800,000.
Heisler introduced no evidence into the first or second trial of this matter upon which the court should have questioned the efficacy of the sale price for the entire group of properties at the U.S. Marshal’s Sale or the 7.95% calculation, nor upon which the court could have calculated the value of the leased-land as an individual parcel in an alternative manner.
For its $800,000 purchase price, Heisler bought a collection of properties which was appraised for $864,500 at the U.S. Marshal’s sale. The trial court’s reasons for judgment show that the trial court applied the leased-land’s proportional value in the U.S. Marshal’s sale, 7.95%, to the sale of the same collection of properties to Heisler for $800,000. We find that based upon the evidence in the record, the trial court reasonably determined that 7.95% of Heisler’s $800,000 purchase price was attributable to the leased-land. Therefore, |1fiwe also find that the trial court was reasonable when it determined that $63,600 of Heis-ler’s sale price was attributable to its purchase of the leased-land and that Royal was entitled to exercise its right of first refusal for that amount. Therefore, this assignment of error has no merit.

CONCLUSION

Because of the foregoing, we affirm the judgment of the trial court.

AFFIRMED

. The area of the leased-land was Lots 6, 7, 8, 9, and 10, plus 25 ft. x 153 ft., Square 53, of the Shrewsbury Subdivision in the Parish of Jefferson in the State of Louisiana. This property is "bounded by Severn Avenue, Veterans Boulevard, 27th Street and North Hul-len Street.” Royal Oldsmobile Co., Inc. v. Heisler Properties, L.L.C., 10-152 (La.App. 5 Cir. 12/28/10), 58 So.3d 483, 485.

. The lease was recorded in the public records of Jefferson Parish, Louisiana, as Instrument No. 793814.

. The lease had a primary term of five years, a first renewal period of five years, a second renewal period of five years, a third renewal period of seven years, and a fourth renewal period of seven years and two months.

. Frank Dimitri's 50% interest in the leased-land, and whether its transfer to various successors triggered Royal’s right of first refusal, was determined in a previous opinion of this Court, Royal Oldsmobile, 58 So.3d at 490. In that opinion, we described how Frank Dimitri passed his 50% ownership interest in the leased-land to his late wife, Josephine DeSal-vo Dimitri when he died in May of 1993. Id, Josephine DeSalvo Dimitri later transferred that 50% ownership interest to the Succession of William C. Garrett through a foreclosure sale by the U.S. Marshals on October 14, 2003. Id. We held that neither of these events triggered Royal's right of first refusal. Id.

. The "Agreement to Purchase and Sell” was a written document signed and executed on August 11, 2003. Its extension, which modified its terms, was a written document signed and executed on September 12, 2003.

. The act of sale transferring ownership from the Succession of Joseph Dimitri and Josephine Virga Dimitri to Josephine DeSalvo Dimi-tri stated that the sale was made, "in consideration of the price and sum of ... $838,500 [dollars.]” $800,000.00 of the purchase price was to be paid in cash at the time of the transfer, with $38,500.00 payable pursuant to a promissory note.

. The act of sale between Josephine DeSalvo Dimitri and Heisler states that the sale was made, "in consideration of the price and sum of SEVEN HUNDRED THOUSAND AND NO/ 100 ($700,000.00) DOLLARS, and the liquidation of a $100,000 debt at Bank of Louisiana, and other good and valuable consideration.” Also, this sale was for a lump price as no prices were individualized for the particular properties transferred by this sale.
Further, Heisler admits that Josephine DeS-alvo Dimitri bought this interest pursuant to a prearranged agreement whereby she would serve as a conduit for Heisler to acquire the properties.

. Both transfers on December 11, 2003 sold a 50% interest in a collection of 55 different immovable properties; the leased-land property at issue here was part of that collection. Despite there being only a single price for this collection of properties, we do not consider *89 this to be a lump sale because of the individual descriptions of these properties in the acts of sale.

. This suit named several other defendants who are not relevant to our decision on this, the second appeal in this case. For a more complete discussion of the proceedings relative to other defendants and what happened regarding the 50% interest originally owned by Frank Dimitri, see our earlier opinion in this case, Royal Oldsmobile, 58 So.3d at 490.

. Mr. Klein had previously moved to intervene in this matter on July 2, 2009. In that motion Mr. Klein alleged that by "separate agreement, not recorded, Henry L. Klein is a 50% owner of Heisler Properties, LLC's interest.” The trial court denied Mr. Klein’s July 2, 2009 motion on August 3, 2009. After this, on July 11, 2010, the described act of sale was executed. In this act of sale, Heisler sold half of its 50% interest in the leased-land described in footnote 1, to Henry L. Klein. This sale did not transfer any ownership interest in any of the other properties which had been previously transferred as a collection. Further, Heisler sold this 25% interest in the leased-land to Klein in this act of sale for $10 "and other good an valuable consideration.”

. On October 17, 2011, the trial court ruled, by motion for partial summary judgment, that Royal was not in default under the Lease prior to the sale to Heisler.

. See La. C.C. art. 2625 Official Cmt. (c) (The grantor of a right of first refusal is conditionally bound; he need only offer the thing for sale to the promisee if he — the promisor— should decide to make a certain transaction. See 2 Litvinoff, Obligations 188 (1975); Litvi-noff, "Consent Revisited", 97 La.L.Rev., 699, at 753-54 (1987)).

. See La. C.C. art. 1767 Official Cmt. (f) (“the word 'condition' means some operative fact subsequent to acceptance and prior to discharge, a fact upon which the rights and duties of the parties depend.”)

. We find that Josephine DeSalvo Dimitri's offer to buy the leased-land on December 11, 2003 did not trigger the lease's right of first refusal because Josephine DeSalvo Dimitri fell into the excluded class of family member. Josephine DeSalvo Dimitri is family under the lease’s right of first refusal provision as she is the former wife of the now deceased original owner Frank Dimitri.

. Although, Royal received written notice of the sale of its leased-land in Heisler’s letter dated March 1, 2004, that notice was not a copy of the offer. That notice was rather merely Heisler's letter informing Royal that the sale had already occurred.

. In Anny v. Babin, 12-164 (La.App. 5 Cir. 7/31/12), 99 So.3d 702, 705, writ denied, 12-1972 (La.12/14/12), 104 So.3d 441, this Court deemed an emailed copy of a signed purchase agreement to be an offer that triggered the right of first refusal.

. See Terrell v. Messenger, 428 So.2d 1241, 1247 (La.App. 3 Cir. 3/9/83), writ denied, 433 So.2d 709 (La.1983) (held that specific performance was the proper remedy when the transferee of an immovable had sufficient notice of the right of first refusal on that immovable by virtue of the right’s presence in the public records). Compare however, Royal Oldsmobile, 58 So.3d at 492, where this Court held that when a right of first refusal is not triggered, there is no right to specific performance.